[No. B208620. Second Dist., Div. Three. July 1, 2010.]

GURPREET SINGH, Plaintiff and Appellant, v.
SOUTHLAND STONE, U.S.A., Inc., et al., Defendants and Appellants.

344

## COUNSEL

Malhotra & Malhotra, Krishna R. Malhotra; and Howard Posner for Plaintiff and Appellant.

Haight Brown & Bonesteel, Rita Gunasekaran, Maureen Haight Gee; Law Offices of Norman A. Filer and Hitendra Bhakta for Defendants and Appellants.

## OPINION

CROSKEY, J.—In this case, we review a trial court's judgment regarding the contract and tort claims of an alien employee who was induced to come to the United States by defendants and who, within just a few months of his arrival, had his promised salary reduced and then was pressured to resign.

Gurpreet Singh moved from India to California to work as a general manager for Southland Stone, U.S.A., Inc. (Southland Stone). Ravinder S. Johar was president of the company. After Singh resigned and had returned to India, he filed suit against Southland Stone and Johar (collectively, defendants), alleging a number of causes of action. The jury awarded Singh compensatory damages for economic and emotional injuries, and punitive damages. Defendants appeal the judgment and the denial of their motion for judgment notwithstanding the verdict. Singh also appeals, challenging a limiting jury instruction and the denial of leave to amend his complaint during trial.

As we explain, we resolve the several issues presented as follows: (1) Singh has shown no prejudicial error in either the limiting instruction or the denial of his request for leave to amend the complaint; (2) the refusal of defendants' proposed jury instruction regarding the salary reduction was error; (3) defendants are entitled to judgment in their favor on the count for breach of the implied covenant of good faith and fair dealing; (4) the special verdict findings regarding alleged misrepresentations and promises made to Singh are inconsistent; (5) such inconsistency also extends to the finding of malice, oppression, or fraud; (6) defendants have shown no error in the award of damages for unpaid wages; (7) the award of damages for intentional infliction of emotional distress is based on injuries suffered in the course and scope of employment for which workers' compensation provides the exclusive remedy; and (8) the workers' compensation exclusivity rule does not, however, preclude this entire action.

We therefore will affirm the judgment in part and reverse in part, and affirm in part and reverse in part the denial of defendants' motion for judgment notwithstanding the verdict.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

1. *Factual Background*

Johar is the president and owner of Southland Stone, an importer and distributor of natural stone based in North Hollywood. Johar and Singh are related through marriage. Johar is married to Singh's first cousin. During a visit to India in November 2003, Johar informed Singh that Southland Stone was seeking a general manager for Internet sales.

Singh visited the Los Angeles area for 10 days in January 2004, at Johar's invitation, to learn more about the employment opportunity. After returning to India, Singh corresponded with Johar regarding potential employment terms. Johar offered a monthly salary of $10,000. He stated in an e-mail to Singh that employment in the United States was " 'at will' " and, "[t]his is not intended to be a 1 year contract." Singh responded by asking Johar what "at will" meant and, upon hearing that it meant that his employment could be terminated at any time, responded that he was uncomfortable with that.

Southland Stone submitted to United States Immigration Customs and Enforcement (ICE) in July 2004 a petition for an H-1B1 nonimmigrant visa

---

[1] We recite facts taken from the reporter's and clerk's transcripts. As required by the rules of appellate procedure, we state the facts in the light most favorable to the judgment. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336 [95 Cal.Rptr.2d 16].)

(specialty occupation) for Singh. The petition stated that the dates of intended employment were from October 1, 2004, to September 30, 2007, that his job title would be "Marketing Management Analyst," and that the annual salary for the position was $33,500.

Singh resigned from his employment in India in September 2004, before he and Johar had agreed to all of the terms of his employment. ICE notified Southland Stone in November 2004 that the visa petition was approved and that the visa was valid from October 2004 through September 2007. Southland Stone sent a copy of the approval notice to Singh in November 2004 and also, for the first time, sent him a copy of the petition. Singh expressed concerns regarding his job title and salary as stated in the petition. Johar responded that the information in the petition was meant for government officials and not for Singh, and that the information for Singh would be in an appointment letter.

Singh returned to the Los Angeles area for three weeks in November and December 2004 to work as a consultant for Southland Stone. Johar provided an appointment letter at that time. The letter stated that Singh's salary was $10,000 per month and that he would receive 10 percent of the net profits from the Web site in addition to his salary. The letter did not state how long he would be employed on those terms and did not state either that Singh was employable at will or that his employment was terminable only for good cause. The letter concluded, "The appointment is subject to a 90 day probationary period."[2] The letter was signed by Johar and called for a countersignature by Singh, but Singh did not sign the letter at that time. Singh returned to work at Southland Stone on January 31, 2005. He signed the appointment letter in February 2005.

Johar had hired a company to develop a Web site for Internet sales and was hopeful that the Web site would be operational by February 2005. The technical development experienced delays, and the Web site was not operational until June 2005. Meanwhile, Singh worked on logistical issues regarding Internet sales, including trucking and warehousing arrangements, establishing a payment system, contracting with an Internet service provider, and other matters. During this time, Johar expressed his dissatisfaction with Singh's job performance and work ethic.

Singh's wife resigned from her employment in India and moved to the Los Angeles area with their two children in May 2005. Johar reduced Singh's monthly salary from $10,000 to $5,000 in early June 2005. The parties

---

[2] A prior draft of the letter had stated that Singh was employable at will. That provision was removed in the final draft, and the language regarding a probationary period was added.

dispute whether Johar provided any forewarning of the salary reduction. Singh and his wife reevaluated their prospects in this country after the salary reduction and decided that his wife and children should return to India. His wife and children returned to India approximately six weeks after their arrival in the United States.

Johar continued to express his dissatisfaction with Singh's job performance and, after the salary reduction, increasingly berated him and insulted him with profanities. Johar suggested that Singh should resign and repeatedly asked him to provide an "exit plan." Singh tendered his resignation in writing, by fax, on February 19, 2006.

Singh returned to the office on February 24, 2006, to return some items and pick up his last paycheck. Southland Stone's bookkeeper, Sunita Singh (known as Choti), met with him first and offered him three checks, including his last regular salary ($991.61), compensation for two weeks' unused vacation time ($1,875.89), and an expense reimbursement.[3] Choti handed him an envelope containing three checks and asked him to sign a letter releasing defendants from liability.[4] Choti left the room and returned to find that the letter was missing. When she asked Singh where "the paper" was, he responded, "What paper?" and stated, "Do you want to do a body search? Should I drop my pants down?"

Johar then asked Singh to sign the letter. Singh signed, but only after striking some words from the letter. Johar insisted that Singh sign the letter as originally presented and told him to go to the conference room. Once in the conference room, Singh again refused to sign. Johar threatened to physically throw him out of the office and grabbed him by the lapels. Johar and Choti both shouted at Singh, and he left the office. According to Choti, she gave the envelope containing the three checks to another Southland Stone employee to mail to Singh. According to Singh, he received only a check for his final salary in the mail.

Singh returned to India in March 2006. He worked as a consultant for an employment recruiter for several months and then started his own employment recruiting company.

---

[3] Choti is a first cousin of both Singh and Johar's wife.

[4] Defendants refer to the letter as "a paper acknowledging receipt of the checks." Choti in her testimony referred to "a letter, a paper saying to sign it, that he got the three checks." Singh testified, however, that defendants refused to hand over the checks unless he signed the letter. Regarding the contents of the letter, he testified, "It basically said that, you know, I would be getting this paycheck and I would have no further rights, you know, against the company." Singh also described the letter as "absolving the company from anything." Defendants did not controvert Singh's testimony on this point, and the letter was not admitted in evidence.

## 2. Pretrial Proceedings

Singh filed a complaint against defendants in April 2006. His second amended complaint filed in June 2007 alleges counts for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unpaid wages, also seeking a waiting time penalty (Lab. Code, §§ 201, 203); (4) false promise; (5) wrongful termination in violation of public policy; (6) intentional infliction of emotional distress; (7) promissory estoppel; and (8) misrepresentation to induce relocation for employment (Lab. Code, § 970).

Defendants moved for judgment on the pleadings in January 2008, arguing that several counts failed to allege facts sufficient to state a cause of action and that the count for intentional infliction of emotional distress was barred by the workers' compensation exclusivity rule. The trial court denied the motion.

## 3. Trial

The jury trial commenced on February 1, 2008. On February 7, 2008, Singh moved for leave to amend his complaint to add statutory (Pen. Code, § 632) and common law counts for invasion of privacy. He argued that evidence produced by defendants for the first time at trial showed that they had intercepted his private e-mail messages in violation of his privacy rights. The court stated that the proposed amendments would introduce new issues that were completely different from the issues being tried and denied the motion.

After the presentation of Singh's case-in-chief, Johar moved for a nonsuit on all counts on the grounds that the proper defendant was Southland Stone as the employer and that there was no basis for Johar to be held liable individually. Southland Stone also moved for a nonsuit on the second through eighth counts on the grounds that the evidence did not support a finding of liability. Southland Stone also argued that the count for intentional infliction of emotional distress was barred by the workers' compensation exclusivity rule. The court granted Johar's motion for a nonsuit as to the first, second, third, fifth, and eighth counts only, and denied the motion as to the other counts. The court also granted Southland Stone's motion for a nonsuit as to the fifth count only, finding that there was no evidence of any public policy violation. The court denied the motion as to the other counts against Southland Stone.

The trial court denied defendants' request for the following special jury instruction regarding the salary reduction: "In an at-will employment relationship, a reduction in the rate of pay is not a breach of the relationship. It is, in

effect, a termination of the existing employment relationship, which the employee may accept by continuing to work or reject by discontinuing working for the employer."

The court instructed the jury, at defendants' request, that the visa petition was admitted in evidence for a limited purpose: "The petition for the H-1 visa was admitted into evidence for the limited purpose [of] showing the contents of the petition and for no other purpose. You may not consider the contents of the petition for H-1 visa as evidence of any provision of any employment agreement between Mr. Singh and his employer in this action."

The court also instructed, with CACI No. 361, that Singh could not be awarded duplicative damages on different counts: "Gurpreet Singh has made claims against Southland Stone U.S.A., Incorporated, for breach of contract, breach of implied covenant in fair dealing [*sic*], promissory fraud, Labor Code violation for nonpayment of wages, promissory estoppel, and Labor Code violations based on willful misrepresentation and claims against Ravinder Johar for promissory estoppel and promissory fraud. If you decide that Gurpreet Singh has proved one or more than one of these claims against Southland Stone, U.S.A., Incorporated, or Ravinder Johar, the same damages that resulted from both claims can be awarded only once."[5]

The jury was also instructed on counts for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) false promise, (5) misrepresentation to induce relocation for employment, (6) intentional misrepresentation, (7) concealment, (8) unpaid wages and waiting time penalty, and (9) intentional infliction of emotional distress.

### 4. *Special Verdict and Judgment*[6]

The jury returned a special verdict finding that:

(1) the employment agreement did not specify a duration of employment;

---

[5] In its unmodified form, CACI No. 361 provides: "[*Name of plaintiff*] had made claims against [*name of defendant*] for breach of contract and [*insert tort action*]. If you decide that [*name of plaintiff*] has proved both claims, the same damages that resulted from both claims can be awarded only once."

[6] As we explain below, we find several of these special verdicts very problematic. For example, while the jury did not specifically find that a breach of contract had not occurred, it did find that there was no agreement reached as to a three-year period of employment or for any period of duration (see special verdict findings Nos. (1) and (3)). These findings obviously negated any claim for breach of contract and thereby undermined the jury's subsequent finding of a breach of the implied covenant of good faith and fair dealing (see No. (2), *post*). Other verdicts are confusing and in apparent direct conflict (e.g., compare special verdict findings Nos. 4, 5, 6, 7 and 10).

(2) defendants prevented Singh from performing his job duties and from realizing the benefits of the employment agreement, and failed to act in good faith, and Singh suffered or will suffer $45,000 in past economic loss and no future economic loss;

(3) defendants did not promise to employ Singh for a period of three years or promise to sponsor him for permanent residency;

(4) defendants did not make an important promise that they had no intention of performing at the time it was made;

(5) defendants did not misrepresent the kind, character, or existence of work;

(6) defendants intentionally or recklessly misrepresented an important fact, and Singh reasonably relied on the representation, and he suffered or will suffer $99,600 in past economic loss, $227,500 in future economic loss, and no past or future noneconomic loss as a result;

(7) defendants intentionally concealed an important fact, and Singh reasonably relied on the concealment, but he suffered no damages as a result;

(8) defendants failed to pay Singh $6,800 in earned wages;

(9) defendants' conduct was outrageous and was a substantial factor in causing Singh to suffer severe emotional distress, and he suffered or will suffer $2,500 in past economic loss, $1,250 in future economic loss, $100,000 in past noneconomic loss, and $150,000 in future noneconomic loss as a result; and

(10) defendants acted with malice, oppression, or fraud.

In the second phase of trial, the jury awarded Singh $350,000 in punitive damages.

The trial court entered a judgment on April 16, 2008, awarding Singh (1) $253,750 in past and future noneconomic damages for intentional infliction of emotional distress; (2) $327,100 in past and future economic damages for misrepresentation; (3) $45,000 in past economic damages for breach of the implied covenant of good faith and fair dealing; (4) $6,800 in damages for failure to pay earned wages; and (5) $350,000 in punitive damages.

5. *Motions for New Trial and for Judgment Notwithstanding the Verdict*

Defendants moved for a new trial, arguing among other things that workers' compensation provided the exclusive remedy for all counts alleged

in the complaint, that the refusal of some of their requested special instructions was error, that the verdict was inconsistent, that the damages were excessive, and that certain findings were not supported by the evidence. The court concluded that defendants had waived the defense of workers' compensation exclusivity by failing to allege the matter as an affirmative defense. The court also concluded that its refusal of the proposed instructions was proper, that the verdict was not inconsistent, that the evidence supported the verdict, and that there was no basis for a new trial. The court therefore denied the new trial motion.

Defendants also moved for judgment notwithstanding the verdict, asserting some of the same arguments. The court denied that motion as well.

### 6. *Appeals*

Defendants filed a notice of appeal from both the judgment and the denial of their motion for judgment notwithstanding the verdict. Singh filed a notice of appeal from the judgment.

## CONTENTIONS

Defendants contend in their appeal that (1) the refusal of their proposed instruction on the salary reduction was error; (2) the jury's effective finding that there was no breach of the employment contract is inconsistent with its finding that defendants breached the implied covenant of good faith and fair dealing; (3) the jury's findings in favor of defendants with respect to false promise, promissory estoppel, and misrepresentation to induce relocation for employment are inconsistent with its finding that defendants had misrepresented and concealed a material fact; (4) the economic damages awarded for intentional misrepresentation are excessive; (5) the noneconomic damages awarded for intentional infliction of emotional distress are excessive; (6) the damages awarded for unpaid wages are excessive, and Singh is not entitled to a civil penalty for willful nonpayment; (7) the evidence does not support the jury's findings of outrageous conduct and severe emotional distress; (8) workers' compensation provides the exclusive remedy for all counts alleged in the complaint; (9) the evidence does not support the jury's finding of malice, oppression, or fraud, as required to support an award of punitive damages; and (10) the jury's finding of malice, oppression, or fraud is inconsistent with its other findings.

Singh contends in his appeal (1) the instruction limiting the admissibility of the visa petition was error; and (2) the denial of leave to amend his complaint to allege counts for violation of privacy was error.

We will deal first with the two issues raised by Singh.

## DISCUSSION

1. *The Singh Appeal*

 a. *Singh Has Shown No Prejudicial Error in the Limiting Instruction*

The trial court instructed the jury that the visa petition was admitted "for the limited purpose [of] showing the contents of the petition and for no other purpose," and that the contents of the petition could not be considered as evidence of any provision of the employment agreement. This limiting instruction was based on the court's stated conclusion that the visa petition was not part of the employment agreement and therefore, under the parol evidence rule, could not be considered to contradict the terms of the agreement. Singh disagrees and argues that (1) the visa petition is admissible to show that the parties agreed to an employment term of three years, for purposes of his count for breach of contract, and (2) defendants promised to employ him for three years, for purposes of his counts for promissory estoppel, intentional misrepresentation, and related counts. Thus, the question presented by Singh's claim of error is whether the trial court properly applied the parol evidence rule.

█ That rule, which is codified in Code of Civil Procedure section 1856, provides that the terms of a writing intended by the parties as a final expression of their agreement cannot be contradicted by evidence of either a prior agreement or a contemporaneous oral agreement. (*Id.*, subd. (a); see Civ. Code, § 1625.) Further, if the parties intended the writing to be a complete and exclusive statement of the terms of the agreement, its terms cannot be explained or supplemented by evidence of consistent additional terms. (Code Civ. Proc., § 1856, subd. (b).) If the writing is ambiguous, however, extrinsic evidence of the parties' intention is admissible, provided that the writing is reasonably susceptible of the meaning supported by the extrinsic evidence. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343 [9 Cal.Rptr.3d 97, 83 P.3d 497]; *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39–40 [69 Cal.Rptr. 561, 442 P.2d 641].) Although the parol evidence rule concerns the admissibility of evidence, it is a rule of substantive law rather than a rule of evidence. (*Casa Herrera, supra,* at p. 343.)

█ A writing that the parties intended to be a complete and exclusive statement of the terms of their agreement is as an "integrated" writing or an "integration." (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561] (*Masterson*).) Whether the parties intended an integration

is a question for the court to decide. (Code Civ. Proc., § 1856, subd. (d).) We independently review that determination. (*Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1001 [285 Cal.Rptr. 870].) A writing may, but need not, expressly state that it is intended as an integration. (*Software Design & Application, Ltd. v. Price Waterhouse* (1996) 49 Cal.App.4th 464, 470–471 [57 Cal.Rptr.2d 36].) In addition to the terms of the writing, a court should also consider the surrounding circumstances, including prior negotiations, and the nature of the purported collateral agreement to determine whether it is reasonable to conclude that the collateral agreement was intended to be part of the bargain. (*Masterson, supra,* 68 Cal.2d at p. 226; *Software Design, supra,* 49 Cal.App.4th at p. 470.)

*Masterson, supra,* 68 Cal.2d 222, stated two alternative tests to determine whether extrinsic evidence of a collateral agreement is admissible.[7] The first test holds that such evidence is admissible if the collateral agreement " 'might *naturally* be made as a separate agreement.' " (68 Cal.2d at p. 227.) The second test holds that such evidence is admissible unless the " 'the additional terms . . . would *certainly* have been included in the document.' " (*Id.* at p. 228.) *Masterson* concluded that the evidence was admissible under either test, and expressed no preference between the two tests.[8] (68 Cal.2d at pp. 228–229.)

As the jury expressly found, there is no express provision in the written employment agreement as to the duration of Singh's employment. A collateral agreement on a three-year employment term therefore would not contradict the written agreement, but would establish an *additional* term. The parties in their prior negotiations had identified the duration of employment as an item of some concern. Singh requested in February 2004 that his salary be stated as "$120,000 per annum and subject to review thereafter" rather than $10,000 per month, and asked, "Is there a difference between stating the

---

[7] Evidence of a collateral agreement as to consistent additional terms is inadmissible if the writing is integrated. (Code Civ. Proc., § 1856, subd. (d).) Thus, the tests in *Masterson, supra,* 68 Cal.2d 222, determine whether a writing is integrated.

[8] *Masterson, supra,* 68 Cal.2d 222, stated in dictum that the second test "would exclude the evidence in still fewer instances." (*Id.* at p. 228.) We can discern no significant difference between the two tests and conclude that, under either test, evidence of a collateral agreement as to consistent additional terms is admissible only if the court determines that the trier of fact reasonably could conclude that, if the additional terms had been agreed to, the parties would certainly have included those terms in their written agreement. (See *Banco Do Brasil, S.A. v. Latian, Inc., supra,* 234 Cal.App.3d at p. 1003 [stating that the two tests essentially express the same standard]; *Wagner v. Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1386 [265 Cal.Rptr 412] [same]; *Marani v. Jackson* (1986) 183 Cal.App.3d 695, 703 [228 Cal.Rptr. 518] [holding that the results under the two tests would be the same in the circumstances there presented]; *Bank of Beverly Hills v. Catain* (1982) 128 Cal.App.3d 28, 37 [180 Cal.Rptr. 67] [same]; *Brawthen v. H & R Block, Inc.* (1972) 28 Cal.App.3d 131, 139 [104 Cal.Rptr. 486] [same].)

same monthly or annually[?]" Johar responded: "Employment in USA is 'at will.' This is not intended to be a 1 year contract. I woul dhope [*sic*] things work out and you are here for a longer time, but typically payment is made monthly and that is whay [*sic*] it is stated that way." After further inquiry and upon learning the meaning of at-will employment, Singh told Johar that he was uncomfortable with such an arrangement. Singh testified that at the time of his resignation from his prior employment in September 2004, the parties still had not resolved the issue of at-will employment.

Singh later objected to a provision in a draft of the employment agreement stating that he was employable at will. That provision was removed and a provision establishing a 90-day probationary period was added. Singh also objected to statements in the visa petition regarding his job title and the amount of his salary. According to Singh, Johar responded: " 'This is not meant for you. This is meant for the embassy. What is meant for you is the appointment letter.' "

The employment agreement addressed Singh's job title and responsibilities, monthly salary, profit sharing, expense reimbursement, health insurance, and 90-day probationary period. It also included confidentiality provisions and a covenant not to compete.

In light of the demonstrated importance to the parties of their respective rights with respect to the duration of employment, the trial court properly concluded that they would have included in the written agreement a provision establishing a fixed term of employment if they had in fact agreed to such a term. Accordingly, we hold that the parties intended the written agreement to be a complete and exclusive statement of the terms of their agreement and that the court properly instructed the jury not to consider the visa petition as evidence of a collateral agreement.

Singh also contends the visa petition is evidence of a promise or representation of three years of employment and supports his counts for promissory estoppel, intentional misrepresentation, and related counts. Our reversal of the judgment on the counts for promissory estoppel, misrepresentation to induce relocation for employment, false promise, intentional misrepresentation, and concealment (discussed *post*) makes it unnecessary for us to decide whether the limiting instruction was prejudicial error with respect to those counts. Moreover, in light of our affirmance of the judgment on the count for breach of contract, it is unlikely that the same instruction would be given on remand or that the issue would arise again in a new trial. (Code Civ. Proc., § 43.)

b. *The Denial of Leave to Amend Was Proper*

██ A trial court may allow the amendment of a pleading at any time up to and including trial. (Code Civ. Proc., §§ 576, 473, subd. (a)(1).) Leave to

amend to conform to proof at trial ordinarily is liberally granted unless the opposing party would be prejudiced by the amendment. (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31 [69 Cal.Rptr. 568, 442 P.2d 648].) Leave to amend a pleading at trial is properly denied, however, if the proposed amendment raises new issues that the opposing party has had no opportunity to defend. (*Ibid.*) The decision whether to grant leave to amend a pleading at trial is committed to the sound discretion of the trial court. (*Ibid.*; *Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 383 [11 Cal.Rptr.2d 524].)

The proposed amendments concerning invasion of privacy would have introduced issues distinct from the other issues at trial. In our view, it was not an abuse of discretion for the trial court to conclude that defendants would be prejudiced by the amendments during trial and to deny the motion. In any event, the trial court may consider any appropriate motion for leave to amend that may be made on remand of this matter.

2. *Defendants' Appeal*

a. *Defendants Are Entitled to Judgment in Their Favor on the Count for Breach of the Implied Covenant of Good Faith and Fair Dealing*

An employment agreement having no specified term is terminable at will by either party. (Lab. Code, § 2922.) An at-will employment may be terminated at any time, with or without cause, for any lawful reason or no reason at all (assuming, of course, that there was no violation of public policy involved). (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*); *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465 [46 Cal.Rptr.2d 427, 904 P.2d 834] (*Scott*).) There is no requirement that the party terminating an at-will employment act in good faith or with good cause. (*Guz, supra,* at p. 351.) If the parties agree that the employment is for a specified term or can be terminated only for good cause, however, the employment is not at will and the agreed condition must be satisfied before the termination of employment. (*Id.* at p. 336.)

Labor Code section 2922 creates a presumption that employment is at will. (*Guz, supra,* 24 Cal.4th at p. 335.) The presumption can be overcome by evidence of an express or implied-in-fact agreement that the employment is for a specified term or can be terminated only for good cause. (*Id.* at p. 336.) Singh sought damages for breach of contract based on the theory that the parties agreed that he would be employed as a general manager for a period of three years and that Southland Stone breached the agreement by forcing his resignation. As we have explained (see, e.g., fn. 6, *ante*), the jury found

that there was no such agreement. Singh challenges that finding only to the extent that he contends the instruction limiting the admissibility of the visa petition was error. We have rejected that contention, as discussed above. Apart from the purported three-year term, Singh did not contend the parties had agreed that his employment was terminable only for good cause. Accordingly, we conclude that his employment was at will.

■ Just as an at-will employment may be terminated at any time, an at-will employee may be demoted at any time. (*Scott, supra*, 11 Cal.4th at pp. 464–465.) "Since it is presumed that an employee may be discharged at will (Lab. Code, § 2922), the at-will presumption would surely apply to lesser quantums of discipline as well." (*Ibid.*) This same principle extends to an employer's unilateral change in the terms of employment, such as a salary reduction. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 620 [101 Cal.Rptr.3d 2, 218 P.3d 262] (*Schachter*); *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 637 [69 Cal.Rptr.2d 300] (*DiGiacinto*).)

"The at-will presumption authorizing an employer to discharge or demote an employee similarly and necessarily authorizes an employer to unilaterally alter the terms of employment, provided that the alteration does not violate a statute or breach an implied or express contractual agreement. (*Scott v. Pacific Gas & Electric Co., supra*, 11 Cal.4th at p. 465; *DiGiacinto, supra*, 59 Cal.App.4th at p. 637.) An 'employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions.' (*DiGiacinto, supra*, 59 Cal.App.4th at p. 637.)" (*Schachter, supra*, 47 Cal.4th at p. 620.)

Singh sought damages for breach of the implied covenant of good faith and fair dealing based on the theory that defendants prevented him from performing his duties by failing to provide the necessary resources, and deprived him of the benefits of his employment. He argued that the Web site was nonfunctional for several months after he began his employment, that he had no support staff and only limited assistance from outside consultants, and that he was subjected to mistreatment and a salary reduction that deprived him of the benefits of the employment agreement. He argued further that his damages included the amount of the salary reduction and approximately $22,000 in expenses incurred in moving his family to California and back to India again after only six weeks. The court instructed the jury that to prevail on this count, Singh must prove that Southland Stone reduced his salary without good cause and failed to act in good faith.[9]

---

[9] Defendants do not separately challenge this instruction. As is apparent from our discussion *ante*, the instruction was erroneous. The instruction proposed by defendants regarding the salary reduction (quoted *ante*), in contrast, accurately stated the law and should have been given.

The jury expressly found with respect to breach of the implied covenant of good faith and fair dealing that Southland Stone prevented Singh from performing his job duties, prevented him "from realizing the benefits of his employment contract," and failed to act in good faith, and that Singh suffered $45,000 in past economic damages as a result. That amount is equal to Singh's aggregate salary reduction for nine months, which is the approximate period of time that he continued to work for Southland Stone after the salary reduction. In light of the evidence, the instructions given, and the argument of counsel, it appears that these findings were based on the erroneous theory that Singh was entitled to continue to receive the benefits of the employment agreement, particularly a $10,000 monthly salary, notwithstanding the fact that he was employable at will. We conclude that because he was employable at will, Singh was not entitled to continue to receive a $10,000 monthly salary and cannot establish liability for breach of the implied covenant based on either the salary reduction or the moving expenses necessitated by the salary reduction.

Although defendants did not move for judgment notwithstanding the verdict on the count for breach of the implied covenant on this ground, it is apparent that there is no substantial evidence to support the award. An appellate court may reverse a judgment with directions to enter a different judgment if it appears from the record that no new evidence of significance would be presented in a new trial and there is only one proper judgment. (Code Civ. Proc., § 43; *Conley v. Matthes* (1997) 56 Cal.App.4th 1453, 1459, fn. 7 [66 Cal.Rptr.2d 518]; see *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 76 [87 Cal.Rptr.2d 754].) We conclude that after a trial in which these issues were fully litigated, there is no indication that any different evidence would be presented in a new trial. Defendants are entitled to judgment in their favor on the count for breach of the implied covenant.

b. *The Special Verdict Findings Are Inconsistent*

(1) *Applicable Law*

A special verdict is inconsistent if there is no possibility of reconciling its findings with each other. (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 [74 Cal.Rptr.3d 235] (*Zagami*).) If a verdict appears inconsistent, a party adversely affected should request clarification, and the court should send the jury out again to resolve the inconsistency. (Code Civ. Proc., § 619; *Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456 [72 Cal.Rptr. 217, 445 P.2d 881] (*Woodcock*); *Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 302–303 [96

Cal.Rptr.2d 605] (*Mendoza*).)[10] If no party requests clarification or an inconsistency remains after the jury returns, the trial court must interpret the verdict in light of the jury instructions and the evidence and attempt to resolve any inconsistency. (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 540–541 [138 Cal.Rptr. 705, 564 P.2d 857], overruled on another ground in *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298]; *Woodcock, supra,* 69 Cal.2d at pp. 456–457.)

On appeal, we review a special verdict de novo to determine whether its findings are inconsistent. (*Zagami, supra,* 160 Cal.App.4th at p. 1092.) With a special verdict, unlike a general verdict or a general verdict with special findings, a reviewing court will not infer findings to support the verdict. (*Ibid.; Mendoza, supra,* 81 Cal.App.4th at pp. 302–303.) " ' "Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error." ' [Citations.]" (*City of San Diego v. D.R. Horton San Diego Housing Co., Inc.* (2005) 126 Cal.App.4th 668, 682 [24 Cal.Rptr.3d 338].) "The appellate court is not permitted to choose between inconsistent answers. [Citations.]" (*Ibid.*) The proper remedy for an inconsistent special verdict is a new trial. (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344 [100 Cal.Rptr.2d 446].)

### (2) *The Findings Regarding Alleged Misrepresentations and Promises Made to Singh Are Inconsistent*

Singh sought damages for promissory estoppel, misrepresentation to induce relocation for employment (Lab. Code, § 970), and false promise based on the theory that defendants represented that he would be employed for a period of three years at an annual salary of $120,000, that Southland Stone would sponsor him in his application for permanent residency, and, with respect to the latter two counts, that defendants had no intention of fulfilling those promises at the time they were made. He sought an award of $1,279,000 in lost income based on his projected earnings up to age 65.[11]

Singh's counsel stated in closing argument that the counts for promissory estoppel, misrepresentation to induce relocation, and "fraud" were closely related to each other and were based on *the same alleged misrepresentations.* He did not distinguish those counts from the counts for intentional misrepresentation and concealment. The court instructed the jury that to establish

---

[10] Code of Civil Procedure section 619 states: "When the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the Court, or the jury may be again sent out." An inconsistent verdict is considered "informal or insufficient" within the meaning of the statute. (*Mendoza, supra,* 81 Cal.App.4th at p. 302.)

[11] Singh was 50 years old at the time of trial.

promissory estoppel, Singh was required to prove a promise of employment for a three-year period and a promise to assist him in his application for permanent residency, and that to establish misrepresentation to induce relocation, he was required to prove an intentional misrepresentation as to the duration of employment. The court instructed with respect to false promise, intentional misrepresentation, and concealment more generally that Singh was required to prove that defendants had made an important promise that they had no intention of performing (false promise), knowingly or recklessly misrepresented an important fact (intentional misrepresentation), or intentionally concealed or failed to disclose an important fact (concealment).

The closing argument, the instructions, and the evidence presented at trial strongly suggested that the counts for promissory estoppel, misrepresentation to induce relocation, false promise, intentional misrepresentation, and concealment all were based on the same alleged misrepresentations or concealments in connection with Singh's decision to accept employment with Southland Stone, particularly with respect to the duration of employment, amount of salary, and assistance in applying for permanent residency.

On this record, we conclude that the jury's special verdict findings that defendants (1) had in fact made no promise to employ Singh for a period of three years or to sponsor him for permanent residency, (2) had made no important promise that they had no intention of performing at the time the promise was made, and (3) had not misrepresented the kind, character, or existence of work are inconsistent with and cannot be reconciled with the jury's *other* findings that defendants had intentionally or recklessly misrepresented an important fact and intentionally concealed an important fact. The appropriate remedy is to reverse the judgment for a new trial on the affected counts.[12] (*Shaw v. Hughes Aircraft Co., supra*, 83 Cal.App.4th at p. 1344.)

Moreover, we believe that this inconsistency in the special verdict findings also extends to the finding that defendants had acted with malice, oppression, or fraud (Civ. Code, § 3294, subd. (a)), which finding apparently was based on the same alleged misconduct. To the extent that the finding may have been based on other conduct in connection with the count for intentional infliction of emotional distress, our conclusion that the workers' compensation exclusivity rule precludes an award of damages on that count (discussed *post*) compels the conclusion that the finding of malice, oppression, or fraud and

---

[12] In light of our conclusion, we need not decide whether the damages awarded for intentional misrepresentation are excessive.

the award of punitive damages cannot be justified on that basis. The issue of malice, oppression, or fraud and the amount of punitive damages, if any, must be retried.[13]

### (3) CACI No. 361 Should Not Be Used with Special Verdict

The trial court instructed the jury, with CACI No. 361, that Singh could not be awarded duplicative damages on different counts, thus suggesting that it was the jury's responsibility to avoid awarding duplicative damages. But neither the instructions nor the special verdict form told the jury how to avoid awarding duplicative damages. With a single general verdict or a general verdict with special findings, where the verdict includes a total damages award, the jury presumably will follow the instruction (such as the one given here) and ensure that the total damages award includes no duplicative amounts. A special verdict on multiple counts, however, is different. If the jury finds the amount of damages separately for each count and does not calculate the total damages award, as here, the jury has no opportunity to eliminate any duplicative amounts in calculating the total award. Absent any instruction specifically informing the jury how to properly avoid awarding duplicative damages, it might have attempted to do so by finding no liability or no damages on certain counts, resulting in an inconsistent verdict.[14]

■ A special verdict must present the jury's conclusions of facts, "and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." (Code Civ. Proc., § 624.) In our view, a special verdict on multiple counts should include factual findings identifying any duplicative amounts, or a finding as to the total amount of damages eliminating any duplicative amounts, so as to allow the trial court to avoid awarding duplicative damages in the judgment. We believe that if a special verdict form is used, CACI No. 361 should not be given. The need to avoid awarding duplicative damages in the judgment should not affect the jury's findings as to the amount of damages suffered as a result of particular conduct in each count.

We believe that the better practice is to instruct the jury to consider each question separately and that its answer to one question should not affect its

---

[13] Defendants offer no reasoned argument in support of their contention that the evidence does not support the jury's finding of malice, oppression, or fraud, and fail to cite or discuss the evidence. We conclude that the contention is waived. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

[14] We are not deciding that this actually occurred here. Instead, the purpose of our discussion is to ensure that it does not occur on remand.

answer to any other question, except as directed in the verdict form.[15] The jury should be instructed that if it reaches more than one question concerning the amount of damages, the same damages may be included in more than one answer, and that the court, rather than the jury, will resolve any concerns regarding duplication of damages.

Our decision in *DuBarry Internat., Inc. v. Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552 [282 Cal.Rptr. 181], is not on point. The jury in that case found in a special verdict that the plaintiff was entitled to recover $1,502,604 for breach of contract and had suffered the same amount of damages as a result of the defendant's bad faith denial of the existence of the contract.[16] (*DuBarry*, at pp. 559–560.) The judgment entered by the trial court awarded both amounts. The defendant's new trial motion was denied by operation of law because the court failed to timely rule on the motion. (*Id.* at p. 560.) On appeal, we held that the record compelled the conclusion that the damages awarded on the two counts were duplicative and we modified the judgment accordingly. (*Id.* at pp. 563–565, 578.) We stated in dicta that the trial court could have avoided a double recovery by instructing the jury that duplicative damages could not be awarded, and that the court had a duty to so instruct. The authority cited for that proposition, *Pugh v. See's Candies, Inc.* (1988) 203 Cal.App.3d 743, 760, footnote 13 [250 Cal.Rptr. 195], however, involved a general verdict rather than a special verdict (*id.* at p. 748) and does not support giving such an instruction when a special verdict is sought.[17] We now believe that an instruction not to award duplicative damages would not have been proper in *DuBarry* and that the appropriate resolution would have been for the trial court, viewing the jury verdict in light of the same record that we reviewed on appeal, to realize that the amounts were duplicative and avoid awarding duplicative damages in the judgment, or deny the new trial motion on the condition that the plaintiff agree to a reduction in the amount of damages (Code Civ. Proc., § 662.5).

---

[15] CACI No. 5012, the concluding instruction for a special verdict form, includes a statement that the jury "must consider each question separately."

[16] *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 769 [206 Cal.Rptr. 354, 686 P.2d 1158], formerly recognized a tort cause of action for bad faith denial of the existence of a contract. *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 103 [44 Cal.Rptr.2d 420, 900 P.2d 669], overruled *Seaman's* on this point and held that there is no such cause of action.

[17] The case cited in *Pugh v. See's Candies, Inc., supra*, 203 Cal.App.3d at page 760, footnote 13, *Acadia, California, Ltd. v. Herbert* (1960) 54 Cal.2d 328 [5 Cal.Rptr. 686, 353 P.2d 294], also apparently involved a general verdict. (*Id.* at p. 337.)

c. *Defendants Have Shown No Error in the Award of Damages for Unpaid Wages*

Defendants offered to pay Singh his final salary in the amount of $991.61 and vacation pay in the amount of $1,875.89, but only if he signed a release. Singh refused to do so. According to defendants, they later mailed the checks to Singh. Singh disputes this and testified at trial that he received a check for his salary only and received no vacation pay.

The court instructed the jury pursuant to Labor Code sections 201, 202, and 203 that Singh was entitled to recover the amount of any unpaid, earned wages and that he was entitled to a waiting time penalty if Southland Stone willfully failed to pay the wages. The jury found that Southland Stone failed to pay $6,800 in earned wages, but did not find that the failure to pay was willful because it did not reach that question on the verdict form. Instead, pursuant to the directions on the verdict form, the jury stopped after answering "no" to a prior question. The parties do not challenge the special verdict form on appeal.

Defendants argue on appeal that the jury must have included a waiting time penalty in its award of $6,800 for unpaid wages and that Singh is not entitled to the penalty because defendants were justified in withholding payment.[18] They cite *Sayre v. Western Bowl* (1946) 76 Cal.App.2d 793 [174 P.2d 466] (*Sayre*), disapproved on another ground in *Reid v. Overland Machined Products* (1961) 55 Cal.2d 203, 207–208 [10 Cal.Rptr. 819, 359 P.2d 251], for the proposition that an employer is justified in requiring an employee to sign a release as a condition on payment of earned wages.

■ Our task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) The statutory language ordinarily is the most reliable indicator of legislative intent. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and

---

[18] Defendants do not argue that a waiting time penalty cannot be awarded without an express finding in the special verdict that the failure to pay was willful. Instead, defendants, in their appellants' opening brief, apparently acknowledge that the failure to pay was willful and argue only that the failure to pay was justified. Defendants argue for the first time in their reply brief that there is no evidence that the failure to pay was willful. A reviewing court ordinarily should not consider an argument raised for the first time in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–766 [60 Cal.Rptr.2d 770].) Defendants have shown no reason for us to deviate from that rule here, so we will not consider the point.

construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71]; *Hassan, supra,* at p. 715.) We cannot insert qualifying language where it is not stated or rewrite the statute to conform to a presumed intention that is not expressed. (Code Civ. Proc., § 1858; *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 [67 Cal.Rptr.3d 330, 169 P.3d 559].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)

■ Labor Code section 201, subdivision (a) states, in relevant part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Labor Code section 202, subdivision (a) states, in relevant part: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." "Wages," for purposes of these statutes, encompasses all benefits to which an employee is entitled as part of his or her compensation, including vacation pay. (*Id.,* §§ 200, subd. (a), 227.3; *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

Labor Code section 203, subdivision (a) states, in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Labor Code section 206, subdivision (a) states: "In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed."

■ Thus, an employer is required to pay the amount of wages due, including vacation pay, immediately upon the discharge of an employee or

within 72 days after an employee's resignation. (Lab. Code, §§ 201, 202.) If there is a dispute as to the amount due, the employer is required to timely pay, without condition, the amount conceded to be due, if any, and the employee may pursue his or her remedies as to the amount in dispute. (*Id.*, § 206.) If the employer willfully fails to pay wages due, the employee is entitled to an additional payment of up to 30 days' wages as a penalty. (*Id.*, § 203.) There is no provision in the Labor Code allowing an employer to condition the required payment of earned wages upon discharge or upon resignation on the employee's signing of a release or on any other conduct by the employee. In our view, the plain language of Labor Code sections 201 and 202 compels the conclusion that the required payment of earned wages is unconditional.

The plaintiff in *Sayre, supra,* 76 Cal.App.2d 793, was the general manager of a bowling alley and cafe. His compensation included a salary in addition to payment of the net profits as a monthly "bonus." (*Id.* at p. 795.) Several weeks after the end of each month, he would receive his bonus payment together with an accounting. (*Id.* at p. 796.) The defendants terminated his employment at the end of January and paid $500 toward his bonus, the full amount of which had yet to be determined. The defendants paid another $500 toward his bonus in February. (*Ibid.*) The defendants tendered a check for $261.87 as the remainder of his bonus in March, together with an accounting, and asked the plaintiff to sign "a release of all claims for wages and bonuses." The plaintiff refused to sign the release. (*Id.* at pp. 796–797.) The plaintiff sued the defendants to recover the unpaid $261.87, an additional $100 that he later determined was due and owing, and a penalty under Labor Code section 203. (*Sayre, supra,* at pp. 797–800.)

*Sayre, supra,* 76 Cal.App.2d 793, concluded that the trial court properly rejected the plaintiff's contention that the full bonus payment was due and payable immediately upon his discharge, concluding instead that the parties' course of dealings indicated an agreement that the bonus was not due until the completion of an accounting several weeks after the end of each month. (*Id.* at pp. 798–799.) *Sayre* also rejected the plaintiff's contention that the signing of a release was a "condition" prohibited by Labor Code section 206, concluding instead that section 206 was inapplicable because there was no dispute between the parties as to the amount of wages due at the time the check was tendered. (*Sayre, supra,* at p. 799.) *Sayre* concluded that the defendants were "justified" in conditioning the final payment on the plaintiff's release of claims for any further salary or bonus, citing *Manford v. Singh* (1919) 40 Cal.App. 700, 702 [181 P. 844], and *People v. Porter* (1930) 107

Cal.App. 782, 784 [288 P. 22]. (*Sayre, supra,* 76 Cal.App.2d at p. 799.)[19] *Sayre* stated further, "section 203 may be invoked by plaintiff only upon proof that the defendant employers wilfully failed to pay wages due him in accordance with section 201, and such proof is utterly lacking." (*Sayre, supra,* at p. 799.)

█ *Sayre, supra,* 76 Cal.App.2d 793, did not explain its conclusion that the defendants were justified in conditioning the final payment on the plaintiff's release of claims. The two opinions cited in *Sayre,* at page 799, did not involve a release or any other condition imposed on the payment of earned wages, and are not on point. In our view, an employer is required to timely pay wages due under Labor Code section 201 or 202 unconditionally and cannot require an employee to sign a waiver as a condition of payment. Accordingly, we decline to follow *Sayre* on this point.

We therefore conclude that defendants have shown no error in the amount of the award.

> d. *The Workers' Compensation Exclusivity Rule Precludes an Award of Damages for Intentional Infliction of Emotional Distress*

> (1) *Applicable Law*

█ Workers' compensation ordinarily provides the exclusive remedy for an injury sustained by an employee in the course of employment and compensable under the workers' compensation law. (Lab. Code, §§ 3600, subd. (a), 3602, subd. (a); *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 812–813 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*).) The workers' compensation exclusivity rule also encompasses any injury " 'collateral to or derivative of' " an injury compensable under the workers' compensation law. (*Vacanti, supra,* at p. 813.)

An injury is compensable under the workers' compensation law only if the statutory conditions of compensation exist and the injury involves a physical or emotional injury to the person.[20] (*Vacanti, supra,* 24 Cal.4th at pp. 813–814; *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 752–753 [7 Cal.Rptr.2d 808, 828 P.2d 1195].) "[O]nly injuries 'to the worker's *person,* as

---

[19] "Under the circumstances here existing the defendants were justified in asserting, as a condition of the accounting as between the parties pursuant to their contractual arrangement, that the payment of the final amount found by them to be due plaintiff should be based upon a release by him of any further salary or bonus claims against defendants. [Citations.]" (*Sayre, supra,* 76 Cal.App.2d at p. 799.)

[20] Labor Code section 3600, subdivision (a) sets forth several "conditions of compensation."

opposed to his *property*,' are compensable. [Citation.]" (*Vacanti, supra*, at p. 814.) A workplace injury that does not involve physical or emotional injury to the person and that is not collateral to or derivative of such an injury is not compensable under the workers' compensation law, so the exclusivity remedy rule does not apply. (*Ibid.*) Thus, for example, the exclusivity rule does not apply to an action to recover economic or contract damages incurred independent of any compensable workplace injury. (*Ibid.*; *Pichon v. Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 501 [260 Cal.Rptr. 677].)

Moreover, the workers' compensation exclusivity rule applies only if the risks resulting in the injury were encompassed within the "compensation bargain." (*Vacanti, supra*, 24 Cal.4th at pp. 811–812.) The exclusivity rule is based on the "presumed 'compensation bargain'" in which the employer assumes liability for injury or death arising out of and in the course of employment without regard to fault, and compensation is relatively swift, in exchange for limitations on the amount of liability. (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054].) The compensation bargain does not encompass conduct that contravenes a fundamental public policy or exceeds the risks inherent in the employment relationship. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902–903 [80 Cal.Rptr.3d 690, 188 P.3d 629] (*Miklosy*); *Vacanti, supra*, 24 Cal.4th at pp. 811–812.)

█ Workers' compensation exclusivity is put at issue, and need not be alleged as an affirmative defense, if the complaint affirmatively alleges facts indicating that the conditions of coverage are present and alleges no facts that would establish an exception to the exclusivity rule or negate the conditions of coverage. (*Doney v. Tambouratgis* (1979) 23 Cal.3d 91, 97 [151 Cal.Rptr. 347, 587 P.2d 1160].) Singh's complaint alleges the existence of an employment relationship and injuries arising out of and in the course of employment. We conclude that these allegations put the matter of workers' compensation exclusivity at issue and reject Singh's argument that defendants waived the defense by failing to timely allege it.

### (2) *Intentional Infliction of Emotional Distress*

Defendants moved for judgment notwithstanding the verdict on the count for intentional infliction of emotional distress based on the workers' compensation exclusivity rule, in addition to their motions for judgment on the pleadings, nonsuit, and new trial against this count on the same ground. A party is entitled to judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the evidence compels a judgment in favor of the moving party as a matter of law. (Code Civ. Proc., § 629; *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68

[104 Cal.Rptr.2d 602, 18 P.3d 29].) The trial court must view the evidence in the light most favorable to the verdict. (*Sweatman, supra*, at p. 68.) On appeal, we independently determine whether substantial evidence supports the verdict and whether the moving party is entitled to judgment in its favor as a matter of law. (*Ibid.*; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1043–1044 [55 Cal.Rptr.3d 158].) If an appellate court determines that the denial of a motion for judgment notwithstanding the verdict was error, it must order the entry of judgment in favor of the moving party. (Code Civ. Proc., § 629.)

 An employer's intentional misconduct in connection with actions that are a normal part of the employment relationship, such as demotions and criticism of work practices, resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as "manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance." (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743].) Workers' compensation ordinarily provides the exclusive remedy for such an injury. (*Miklosy, supra*, 44 Cal.4th at p. 902; *Cole, supra*, at p. 160.) Conduct in which an employer steps out of its " 'proper role' " as an employer or conduct of " 'questionable relationship to the employment,' " however, such as a criminal false imprisonment, is not encompassed within the compensation bargain and is not subject to the exclusivity rule. (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 713, 717–718, 722–723 [30 Cal.Rptr.2d 18, 872 P.2d 559] (*Fermino*).)

Singh sought damages for intentional infliction of emotional distress based on evidence that Johar mistreated him at work. Singh testified that Johar berated and humiliated him, criticized his job performance, and insulted him with profanities on a regular basis beginning in June 2005. Johar entered his office one day while Singh was eating lunch and working on his laptop computer. According to Singh, Johar was irate about something that he wanted immediately. When Singh responded that he would provide it after he finished eating lunch, Johar stated that he wanted it right away and slammed the laptop computer shut onto Singh's hand, which held a sandwich. Singh also testified that on another occasion, Johar shouted at him, grabbed his lapels, and threatened to throw him out of the office if he did not sign a release.

We conclude that such misconduct all occurred in the normal course of the employer-employee relationship. The misconduct all occurred in the workplace and involved criticisms of job performance or other conflicts arising from the employment. Although the misconduct was offensive and clearly inappropriate, we believe that it all arose from risks encompassed within the

compensation bargain. This does not by any means excuse the misconduct, but compels the conclusion that, absent a violation of a fundamental public policy, which has not been shown, the workers' compensation exclusivity rule applies to any emotional injury arising from the described misconduct. Because the count for intentional infliction of emotional distress is based exclusively on misconduct that occurred in the normal course of the employment relationship, we conclude that the exclusivity rule applies and that defendants are entitled to judgment notwithstanding the verdict on this count.[21] This does not necessarily preclude an award of damages for emotional distress resulting from other injuries to which the exclusivity rule does not apply, as discussed below.

We reject Singh's argument that the dual capacity doctrine establishes an exception to the workers' compensation exclusivity rule in these circumstances. The dual capacity doctrine holds that if an employer occupies another relationship toward its employee that imposes a duty different from those arising from the employment relationship, the employer can be liable in tort for a breach of that duty. (*Jones v. Kaiser Industries Corp.* (1987) 43 Cal.3d 552, 560 [237 Cal.Rptr. 568, 737 P.2d 771] (*Jones*); *Bell v. Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 277 [179 Cal.Rptr. 30, 637 P.2d 266].) The 1982 amendments to Labor Code section 3602, subdivision (a), however, abrogated much of the dual capacity doctrine. (*Fermino, supra,* 7 Cal.4th at pp. 719–720; see *Jones, supra,* 43 Cal.3d at p. 561.) Section 3602, subdivision (a), as amended, reiterates the exclusivity rule and states, in relevant part, "the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer." Because the familial relationship between Singh and Johar existed prior to and at the time of the workplace injury, any duty arising from that relationship cannot establish an exception to the exclusivity rule. (*Lake v. Lakewood Chiropractic Center* (1993) 20 Cal.App.4th 47, 53 [24 Cal.Rptr.2d 358].)

> (3) *Promissory Estoppel, Misrepresentation to Induce Relocation for Employment, False Promise, Intentional Misrepresentation, and Concealment*

The workers' compensation exclusivity rule does not apply to an injury resulting from conduct in violation of a fundamental public policy, as we have stated. Labor Code section 970 establishes a fundamental public policy prohibiting a misrepresentation to induce a person to relocate for

---

[21] In light of our conclusion, we need not address defendants' other contentions challenging the award of damages for intentional infliction of emotional distress.

employment.[22] (*Finch v. Brenda Raceway Corp.* (1994) 22 Cal.App.4th 547, 554 [27 Cal.Rptr.2d 531].) The exclusivity rule therefore does not apply to the count for misrepresentation to induce relocation for employment based on the statute. A violation of Labor Code section 970 constitutes an intentional misrepresentation. (*Finch,* at p. 554.) To the extent that other counts are based on the same alleged intentional misrepresentation, the same fundamental public policy is at issue and the exclusivity rule is inapplicable. Moreover, the exclusivity rule does not preclude an award of economic damages that do not derive from any physical or emotional injury, to the extent that any of these counts seek such damages. (*Vacanti, supra,* 24 Cal.4th at p. 814.)

### (4) *Unpaid Wages*

 Damages for unpaid wages are economic damages that do not derive from any physical or emotional injury to the person. The workers' compensation exclusivity rule therefore does not apply to the count for unpaid wages. (*Vacanti, supra,* 24 Cal.4th at p. 814.)

### *DISPOSITION*

The judgment is affirmed as to the denial of relief on the count for breach of contract and the award of damages on the count for unpaid wages. The judgment is reversed in all other respects and the matter is remanded with directions to the trial court to (1) conduct a new trial on the counts for promissory estoppel, misrepresentation to induce relocation for employment, false promise, intentional misrepresentation, and concealment, and (2) enter a judgment in favor of defendants on the count for breach of the implied covenant of good faith and fair dealing at the conclusion of the trial court proceedings. The denial of defendants' motion for judgment notwithstanding

---

[22] Labor Code, section 970 provides: "No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:

"(a) The kind, character, or existence of such work;

"(b) The length of time such work will last, or the compensation therefor;

"(c) The sanitary or housing conditions relating to or surrounding the work;

"(d) The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought."

the verdict is reversed as to the count for intentional infliction of emotional distress with directions to enter a judgment in favor of defendants on that count at the conclusion of the trial court proceedings, and is otherwise affirmed. Each party shall bear its own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied July 21, 2010, and the petition of appellant Gurpreet Singh for review by the Supreme Court was denied September 15, 2010, S185300.