Filed 12/15/14

**CERTIFIED FOR PARTIAL PUBLICATION[*]**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>COBRA SOLUTIONS, INC., et al.,<br><br>　　　Defendants and Appellants. | A136679<br><br>(San Francisco County<br>Super. Ct. No. CGC-03-417218) |

In *City & County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839 (*Cobra I*), our Supreme Court held the entire City Attorney's Office was vicariously disqualified from representing the City and County of San Francisco (City) in this lawsuit against a City contractor, Cobra Solutions, Inc., and a related entity, Telecon L.T.D., Inc.[1] Following remand to the trial court, the City retained substitute counsel and the case proceeded to trial on the City's suit for breach of contract and related claims and Cobra's counterclaims. The jury denied any relief to Cobra and awarded the City approximately $24,000. In the published portion of this opinion, we discuss Cobra's motion in limine seeking to preclude the City from using at trial any evidence procured with the participation of the City Attorney's Office. We hold Cobra waived this issue by failing to

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II, III, IV, V, VI, and VII.

[1] Although the defendants are distinct entities with somewhat different roles in the factual background, the differences are not relevant for the purposes of our analysis. For convenience, we use "Cobra" to refer to either Cobra Solutions, Inc., Telecon L.T.D., Inc., or both entities.

1

timely raise it.  We address Cobra's remaining claims in the unpublished portion of the opinion.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 1998, the City entered into a contract with a joint venture comprised of Cobra and other entities; during the periods relevant here, only Cobra remained a party to the joint venture.  Under the contract (the master contract), Cobra was one of a number of prequalified vendors of information technology goods and services to the City as part of the City's "Computer Store."  This prequalification program had been established through the City's Committee on Information Technology (Technology Committee) to expedite the procurement of information technology goods and services for City agencies.  Use of Computer Store vendors was not mandatory.  City departments could choose to get information technology goods and services through a Computer Store vendor or by submitting a request for proposals and soliciting bids from other vendors.  A little less than half of the City's information technology purchases were made through Computer Store vendors.

In 1999 and 2000, Cobra submitted five invoices to the City based on invoices submitted to Cobra from one of its subcontractors, Monarch Enterprises (Monarch).  Monarch had not performed the work identified in the invoices.  Instead, Monarch was a sham corporation run by Marcus Armstrong, the then-manager of information technology for a City agency.  There was evidence at trial Cobra had done nothing to verify that Monarch had in fact performed the work for which Cobra was billing the City.  The City paid Cobra the full amount of the invoices: the amount Cobra owed Monarch for the purportedly performed work plus an additional profit markup for Cobra.

In February 2003, after the City discovered a separate scheme involving Armstrong and a different Computer Store vendor, the City filed the instant lawsuit

---

[2] We deny Cobra's January 15, 2014 request for judicial notice as the requested documents are not relevant to this appeal.  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

against Armstrong and others. In April, the City amended the complaint to add Cobra as a defendant, alleging breach of contract and tort claims, among others.

Around the time the amended complaint was filed, the City received complaints from subcontractors that Cobra had not paid them for completed work for which the City had paid Cobra. The City requested Cobra submit to an audit pursuant to the master contract.[3] Cobra did not submit to the audit request. In May 2003, the Technology Committee terminated the master contract with Cobra.

Shortly thereafter, Cobra filed a motion to disqualify the City Attorney's Office in the instant litigation. The basis of the motion was that Dennis Herrera, the City Attorney, represented Cobra on matters including City contracts when he was in private practice. When the City Attorney's Office became aware of the conflict, Herrera had personally been screened off from all matters related to Cobra. However, other staff members in the City Attorney's Office continued to work on these matters and represented the City in this litigation. In July 2003, the trial court granted Cobra's motion and ordered the City to retain independent counsel in this lawsuit. The City appealed the order and the trial court stayed trial court proceedings pending appellate review.

Although the litigation was stayed during the appeal, other matters proceeded. First, the City reviewed outstanding invoices from Cobra and determined that the City owed approximately $2.3 million to Cobra for work performed by Cobra's subcontractors. In December 2003, the City filed an interpleader action to determine the lawful distribution of the funds. The interpleader action was eventually resolved through a stipulated order. Second, the City reviewed bids for a new Computer Store contract. In

---

[3] The master contract provided: "Contractor agrees to maintain and make available to the City, during regular business hours, accurate books and accounting records relating to its work under this Agreement. Contractor will permit City to audit, examine and make excerpts and transcripts from such books and records, and to make audits of all invoices, materials, payrolls, records or personnel and other data related to all other matters covered by this Agreement . . . ."

December 2003, the Technology Committee decided not to award Cobra a second master contract.

In June 2006, the California Supreme Court issued an opinion affirming the trial court's disqualification order. (*Cobra I, supra,* 38 Cal.4th 839.) The Supreme Court held an ethical screen is not sufficient protection where, as here, the conflicted attorney is the head of a government law office. (*Id.* at pp. 853–854.) Accordingly, the court held the entire City Attorney's Office was vicariously disqualified from this litigation. (*Id.* at p. 854.) Following the decision, the City retained independent counsel and the litigation recommenced.

Trial began in January 2012. The City contended Cobra breached the master contract by billing the City for work that had not been performed; failing to properly supervise its subcontractor, Monarch; failing to timely pay subcontractors; and refusing to submit to an audit. The City also asserted claims for intentional and negligent misrepresentation and for violation of state and local false claims acts (Gov. Code, § 12650 et seq.; S.F. Admin. Code, § 6.80 et seq.) based on Cobra's invoices for work purportedly performed by Monarch. Cobra counterclaimed for breach of contract and for violation of 42 U.S.C. section 1983, alleging the City debarred Cobra without due process in connection with the City's decision not to award Cobra a second master contract.

In February, the jury returned verdicts against Cobra on the City's contract claims and claim for intentional misrepresentation. The jury found the City's damages on these claims to be $24,498, equivalent to the amount of Cobra's profit on the Monarch invoices. The jury found Cobra not liable on the City's claims for negligent misrepresentation and for violation of the false claims acts. The jury rejected all of Cobra's counterclaims against the City.

After the jury verdict, the trial court issued a statement of decision on the City's equitable claims against Cobra. The trial court found for the City on its claims under Business and Professions Code section 17200, Government Code section 1090, and unjust enrichment. The trial court awarded the City $24,498 on each of these claims, not

4

to be added to the amount already awarded Cobra on the legal claims.  This appeal followed.

DISCUSSION

I. *Cobra's Motion in Limine*

    A. *Background*

On January 18, 2012, five days before trial was scheduled to start, Cobra filed a motion in limine seeking to preclude the admission of evidence "tainted" by the City Attorney's Office's involvement in matters related to Cobra during the time between the trial court's 2003 order disqualifying the office from representing the City in this litigation and the Supreme Court's 2006 affirmance, after which the City retained independent counsel.  Specifically, Cobra pointed to participation by the City Attorney's Office in the City's investigation of unpaid invoices to Cobra for work performed by Cobra's subcontractors, as well as the City Attorney's Office's representation of the City in the subsequent interpleader action.  Cobra sought an order precluding the City from presenting any evidence relying on information compiled by or resulting from the participation of the City Attorney's Office.  Cobra noted identification of such "tainted" evidence would be "extremely difficult, if not impossible," because of both "the pervasiveness of the taint" and "the inability of witnesses to remember" events "nearly a decade after the fact."

In its opposition, the City argued the City Attorney's Office's participation in matters related to Cobra after the trial court's 2003 order was limited, and Cobra had failed to prove any evidence was tainted.  The City also challenged the timing of Cobra's motion, arguing: "The proper time for Cobra to have brought this motion was in 2006, immediately after the Supreme Court issued its opinion rather than on the eve of trial after [the City] and its private counsel had expended significant resources on this case."

The trial court denied the motion on the ground that, inter alia, it was "untimely in view of the lapse of time."  The court stated it might still impose a sanction "for what the defendant characterizes as a violation of" the trial court's order disqualifying the City Attorney's Office after hearing the evidence.  In its post-trial statement of decision, the

5

trial court found insufficient evidence to show the City Attorney's Office disobeyed the court order.

B. *Analysis*

The parties have cited no California case addressing motions to exclude evidence tainted by the involvement of disqualified counsel. Instead, Cobra cites decisions from other jurisdictions considering, after an order disqualifying counsel, whether successor counsel can have *access* to disqualified counsel's work product and whether pleadings filed by disqualified counsel should be stricken. (See *First Wisconsin Mortg. Trust v. First Wisconsin Corp.* (7th Cir. 1978) 584 F.2d 201; *In re George* (Tex. 2000) 28 S.W.3d 511 (*George*).)

California cases provide a disqualification motion can be waived if not timely filed. (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 844 (*Liberty*); accord, *Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 490.) "[T]he delay has to be extreme or unreasonable before it operates as a waiver. [Citations.] It has been held that when the party opposing the motion has made a prima facie showing of unreasonable delay causing prejudice, disqualification should not be ordered, and the burden shifts to the moving party to justify the delay. [Citation.] It has also been held that the prejudice to the opponent must be extreme." (*Liberty, supra,* at p. 845.)

In *George, supra,* the Texas Supreme Court discussed the timeliness of a motion to restrict access to disqualified counsel's work product. The McKool and the Pennington law firms were disqualified from representing a party because attorneys at those firms had previously worked at the firm representing the opposing parties. (*George, supra,* 28 S.W.3d at p. 512.) On the day McKool and Pennington withdrew, the Hartnett firm entered an appearance. (*Ibid.*) Counsel for the opposing parties "immediately notified Hartnett of their position that new counsel should not receive, review or use any of McKool and Pennington's work product. . . . When Hartnett advised that it did not agree, . . . Motions for an Order Prohibiting Turnover of Work Product and Related Material" were filed by the opposing parties. (*Id.* at pp. 512–513.)

6

The Supreme Court concluded, "As a rule, '[a] party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint.' [Citation.] This rule applies equally to motions to restrict access to work product." (*Id.* at p. 513.)[4] We agree with the reasoning in *George*: motions seeking to restrict the use of evidence, work product, or pleadings developed by disqualified counsel must be timely filed.

Applying this test, we first find Cobra's delay unreasonable. Cobra did not raise the issue until more than five years after successor counsel was retained.[5] Cobra's only attempt to justify this delay is that it brought the motion "shortly after [the City] disclosed its intent to rely substantially at trial on evidence gathered by the City Attorney in its pretrial disclosures," thereby suggesting it had no earlier notice that the City might use such evidence. But the evidence Cobra submitted with its in limine motion demonstrates it knew well before the City retained independent counsel that the City Attorney's Office was participating in certain City actions regarding Cobra. First, in 2003, following the trial court's disqualification order, the City Attorney's Office and Cobra's counsel corresponded about Cobra's outstanding invoices and payments Cobra owed its subcontractors. From this correspondence, Cobra was aware that the City Attorney's Office was participating in the City's investigation of this matter. Second, the City Attorney's Office filed the interpleader action in December 2003—in which Cobra was a

---

[4] *George* rejected the argument that the motion to restrict access should have been filed simultaneously with the disqualification motion. "Access to McKool and Pennington's work product only became a ripe issue once those firms were disqualified. Upon learning that Hartnett intended to seek access to the work product, [the opposing parties] immediately moved to restrict access. On this record, we conclude that no waiver has occurred." (*George, supra,* 28 S.W.3d at p. 513.)

[5] There is no record evidence Cobra informed the City prior to the in limine motion that it would object to the use of any evidence developed with the participation of the City Attorney's Office. Cobra also did not seek any such remedy in its original motion to disqualify.

party—and continued to represent the City until it was disqualified in that action.[6] Accordingly, at the time of the Supreme Court's decision in 2006, Cobra was well aware the City might use at trial evidence developed with the participation of the City Attorney's Office. (Cf. *Liberty, supra,* 194 Cal.App.4th at p. 846 [finding substantial delay after former client was on "inquiry notice" of attorney's possible knowledge of former client's procedures rendered disqualification motion untimely].) Cobra has provided no reasonable explanation for the more than five year delay in raising this issue.

We also find the prejudice to the City to be extreme. The in limine motion, related to the use of what Cobra argues would be most or all of the City's evidence, was filed only days before trial. Years had passed since the challenged conduct took place. Cobra itself acknowledged the prejudice in its in limine motion, noting identification of any tainted evidence would be "extremely difficult, if not impossible," in part because of "the inability of witnesses to remember" events "nearly a decade after the fact." Further, the unjustified delay effectively lulled retained counsel into failing to develop evidence unconnected to that developed by the City Attorney's office.

Accordingly, we affirm the trial court's ruling denying Cobra's in limine motion on the ground that it was untimely.[7]

---

[6] At oral argument, Cobra contended it knew only that it had turned over records to the City Attorney's Office but did not know the City Attorney's Office was participating in the audit or review of these records until the deposition of a City auditor, Winnie Woo, shortly before trial. However, in August 2003, the City Attorney's Office wrote Cobra's counsel describing specific inadequacies with certain records provided by Cobra, providing Cobra with notice that the City Attorney's Office was examining the records. Moreover, the City Attorney's Office was involved in the interpleader action based on the outstanding payments that were the subject of the audit. This is ample evidence that Cobra was aware of the City Attorney's Office's involvement in the audit well before the Woo deposition.

[7] Because of this conclusion, we need not address Cobra's related arguments regarding the City's use of purportedly tainted evidence at trial: the court erred in deferring resolution of the issue, the court erred by failing to instruct the jury on purportedly tainted evidence, Cobra should not have been required to prove which evidence was tainted, and

8

## II. *Unclean Hands*

Cobra challenges the trial court's finding there was insufficient evidence to support its unclean hands affirmative defense. We affirm.

" 'The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands . . . or he will be denied relief, regardless of the merits of his claim.' [Citation.] 'The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy.' " (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1400 (*Bank of America*).) "Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979 (*Kendall-Jackson*).) "The misconduct must ' " 'prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.' " ' " (*Ibid.*)

We need not decide whether our review of the trial court's ruling is for substantial evidence or abuse of discretion (compare *Bank of America, supra,* 217 Cal.App.4th at p. 1400 [" 'The decision of whether to apply the defense based on the facts is a matter within the trial court's discretion' "]; with *Kendall-Jackson, supra,* 76 Cal.App.4th at p. 978 ["Whether the doctrine of unclean hands applies is a question of fact"]), as we would affirm under either standard. Moreover, contrary to Cobra's argument, to prevail on appeal it must do more than show substantial evidence in support of its affirmative defense. Cobra had the burden of proving the City acted with unclean hands. (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 54.) The trial court found Cobra failed to satisfy this burden. "[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the

the court erred in denying Cobra's motion for a new trial because of the use of purportedly tainted evidence.

9

appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

Cobra argues the following conduct by the City warrants application of the unclean hands defense: pursuing the litigation with the City Attorney's Office, demanding an audit conducted by the City Attorney's Office, withholding money owed to Cobra, and using purportedly tainted evidence at trial.

The City's pursuit of the litigation with the City Attorney's Office does not compel a finding of unclean hands as a matter of law. While there may be circumstances in which the use of conflicted counsel constitutes unclean hands, Cobra has failed to show the conduct here was unconscionable or in bad faith. There is evidence that the City Attorney's Office implemented an ethical screen to wall off Herrera as soon as Cobra's involvement with Armstrong was uncovered. Although this ethical screen proved insufficient to defeat a motion to disqualify counsel, it is relevant when considering whether the City's conduct was in bad faith.[8] None of the remaining circumstances raised by Cobra compel a finding of unclean hands.

III. *Inconsistent Special Verdicts*

Cobra argues the jury made inconsistent findings on the City's claims for intentional misrepresentation, negligent misrepresentation, and violation of false claims acts. Specifically, Cobra argues (1) findings in the intentional misrepresentation verdict are inconsistent with findings in the false claims act verdict, and (2) findings in the

---

[8] The cases cited by Cobra are not to the contrary. (See *Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 617–618 [undisputed that conflicted counsel, who erected no ethical screen, possessed confidential information material to the subsequent litigation]; *In re Occidental Financial Group, Inc.* (9th Cir. 1994) 40 F.3d 1059, 1062–1063 [attorney seeking fees for work performed on behalf of a bankrupt estate failed to disclose to the court his concurrent representation of the bankrupt estate's principals, whose interests were indisputably adverse to that of the estate].)

10

intentional misrepresentation verdict are also inconsistent with findings in the negligent misrepresentation verdict.

On the City's claim for intentional misrepresentation, the jury found the following: "Cobra ma[d]e a false representation to [the City] that invoices it submitted to [the City] on behalf of Monarch Enterprises and Marcus Armstrong were valid invoices." The identical finding was made for purposes of the City's negligent misrepresentation claim. On the City's claim for violation of the false claims acts, the jury found Cobra did *not* "[p]resent or cause to be presented to an officer or employee of [the City] a false claim for payment or approval" or "[m]ake, use or cause to be used a false record or statement to get a false claim paid or approved by [the City]."

"On appeal, we review a special verdict de novo to determine whether its findings are inconsistent. [Citation.] With a special verdict, unlike a general verdict or a general verdict with special findings, a reviewing court will not infer findings to support the verdict." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358 (*Singh*).) "[T]here is no presumption in favor of upholding a special verdict when the inconsistency is between two questions in a special verdict. [Citation.] 'Where there is an inconsistency between or among answers within a special verdict, both or all the questions are equally against the law.' [Citations.] 'The appellate court is not permitted to choose between inconsistent answers.' " (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 (*Zagami*).) "The proper remedy for an inconsistent special verdict is a new trial." (*Singh, supra,* at p. 358.)

As an initial matter, the City argues Cobra waived any inconsistency by failing to raise it before the jury was discharged.[9] "If the verdict is merely ambiguous, a party's failure to request a correction or clarification of the verdict before the jury is discharged may amount to a waiver of the ambiguity or defect." (*Zagami, supra,* 160 Cal.App.4th at p. 1092, fn. 5.) However, "inconsistent jury findings in a special verdict are not subject

---

[9] Cobra raised the issue before the trial court in post-trial motions.

11

to waiver." (*Id.* at p. 1093, fn. 6.) Cobra contends the special verdicts are inconsistent, not merely ambiguous, and it therefore did not waive this challenge. We agree.

The jury's finding that Cobra submitted false invoices to the City for purposes of the misrepresentation claims is inconsistent with its finding that Cobra did *not* submit false claims for purposes of the claims for violation of the false claims acts. The City attempts to reconcile the verdicts by arguing "false claim is a term of art that is different than a fraudulent statement." But the only statements at issue in the misrepresentation claims were Cobra's invoices seeking payment from the City. A claim is defined as "any request or demand . . . for money, property, or services" (Gov. Code, § 12650, subd. (b)(1); see also S.F. Admin. Code, § 6.83 [" 'claim' includes any request or demand for money, property or services"]), and the jury was so instructed. We see no basis to conclude that Cobra's invoice is not a "claim" under these acts. (See *San Francisco Unified School Dist. ex rel. Contreras v. Laidlaw Transit, Inc.* (2010) 182 Cal.App.4th 438, 447–448 ["There is no dispute that [the defendant's] invoices were 'claims' within the meaning of the [state false claims act]"].) Moreover, in its closing argument, Cobra did not argue the invoices were not "claims" for purposes of the false claims acts. Instead, it argued generally with respect to the "fraud" claims only that Cobra did not know the Monarch invoices were fraudulent. The City argued to the jury that the false claims act claims were "very similar to the intentional misrepresentation claim" and that "[a]n invoice can be a claim." There is no basis to infer that the jury concluded Cobra's invoices were not "claims." (See *Singh, supra,* 186 Cal.App.4th at p. 358–359.)[10]

_____

[10] For the first time at oral argument, the City raised a new theory to reconcile the intentional misrepresentation and false claims act claims. " ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission." (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.) The same considerations of fairness preclude the City from raising an argument for the first time at oral argument. Even if we considered this untimely argument, it would not save the verdicts. The City's new theory is that the jury's finding on the false claims act

Accordingly, we reverse the judgment with respect to the City's claims for intentional misrepresentation, negligent misrepresentation, and violation of the false claims acts. We remand those claims for a new trial. (*Singh, supra,* 186 Cal.App.4th at p. 358.)[11]

IV. *Contract Claims*

---

claims, when read in light of the trial court's response to a jury note, could be construed as a finding that Cobra did not knowingly present a false claim. The City contends the jury could have found, on the intentional misrepresentation claim, Cobra acted with reckless indifference but not knowingly, and therefore the two verdicts can be reconciled. Assuming, without deciding, the findings could be so reconciled, this conclusion renders findings in the intentional and negligent misrepresentation verdicts irreconcilable. We see no means to reconcile a finding that Cobra acted with reckless indifference as to the validity of the Monarch invoices for purposes of the intentional misrepresentation claim with the jury's finding that Cobra had reasonable grounds for believing the Monarch invoices to be valid for purposes of the negligent misrepresentation claim. (See *Delaney v. Baker* (1999) 20 Cal.4th 23, 31 [" 'Recklessness' refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur"].) As the findings in the three verdicts could not be reconciled with each other, and we are " 'not permitted to choose between inconsistent answers' " (*Zagami, supra,* 160 Cal.App.4th at p. 1092), the City's argument, even if timely, could not save the verdicts.

[11] We need not address Cobra's argument that findings in the negligent misrepresentation verdict are inconsistent with findings in the intentional misrepresentation verdict. This argument, if successful, would have resulted in a reversal of the negligent misrepresentation verdict, a result we have already reached. We also need not address whether, had Cobra not argued findings in the negligent misrepresentation verdict conflicted with those in the intentional misrepresentation verdict, we would nonetheless reverse the negligent misrepresentation verdict. (See *In re Marriage of Garrity and Bishton* (1986) 181 Cal.App.3d 675, 690.)

Moreover, Cobra's challenges to the trial court's rulings on certain of the City's claims—Business and Professions Code section 17200, violation of Government Code section 1090, and unjust enrichment—are based solely on the ground that these rulings are inconsistent with the jury verdicts on negligent misrepresentation and violation of the false claims acts. Since we are reversing and remanding those jury verdicts, Cobra's challenges are moot. In addition, Cobra contends the trial court erroneously refused to award Cobra prevailing party fees under the state false claims act (Gov. Code, § 12652, subd. (g)(9)(B)), but Cobra is no longer a prevailing party on that claim.

13

Cobra raises a number of challenges to the jury's verdicts on the contract claims. We reject these challenges.

Cobra first contends the trial court erroneously submitted to the jury a question of law regarding contract interpretation: whether, because of public policy and the law of the case, the master contract did not require Cobra to submit to an audit conducted by the City Attorney's Office. In effect, Cobra argues the trial court should have instructed the jury that Cobra could refuse to comply with such an audit on the ground that the City Attorney's Office had a conflict of interest, without breaching the audit demand provision of the contract. We need not decide if the omission of such an instruction was error because any such error would be harmless.

"A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' " (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.] Of course, that determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury. [¶] But the analysis cannot stop there. Actual prejudice must be assessed in the context of the individual trial record. . . . Thus, when deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580–581.)

Although the City presented four alternative theories for its breach of contract claim—billing the City for work that had not been performed, failing to properly supervise Monarch, failing to timely pay subcontractors, and refusing to submit to an audit—we do not know which theory the jury relied upon. We therefore assume the jury verdict rested on the audit demand theory and analyze it alone. (See *Lundy v. Ford Motor Co.* (2001) 87 Cal.App.4th 472, 480.) First, Cobra does not contend it was precluded from introducing evidence regarding the disqualification order—which was

14

admitted into evidence—and Cobra's reasons for refusing the audit demand. Cobra was permitted to and did argue that the conflict of interest was the reason Cobra refused to comply and that it rendered Cobra's refusal reasonable. Indeed, Cobra argued to the jury, with no objection from the City, "There is no question that the City's demands for an audit [with the City Attorney's Office's participation] were unlawful. That's already been decided." Second and most significantly, the state of the evidence was strong that the conflict of interest was not the reason Cobra refused to comply with the audit demand. James Brady, Cobra's president and chief executive officer, testified he had the authority to decide whether to submit to the audit demand. He testified to a number of initial concerns about the audit, one of which was the involvement of the City Attorney's Office, but he subsequently authorized the audit to proceed with the involvement of the City Attorney's Office. This is confirmed by contemporaneous letters from Cobra's counsel agreeing to the City Attorney's Office's participation in an audit. Despite this agreement, Cobra ultimately did not comply with the audit demand. The City argued the conflict of interest was not the actual reason Cobra refused to comply with the audit.[12] The jury did not submit any questions on this issue. Accordingly, any error in omitting a jury instruction that if Cobra refused to comply with the City's audit demand because of the City Attorney's Office's conflict of interest, Cobra was not liable for breach on that ground, was not prejudicial.

Cobra next contends only the City's Director of Purchasing and Services (Purchaser), not the Technology Committee, had authority to terminate the master contract. Cobra appears to claim the trial court improperly submitted to the jury the issue of who had authority to terminate the master contract. This argument is waived because

---

[12] The City's counsel did make a comment in closing arguments which suggested Cobra's complaint about the conflict of interest was not valid because of the ethical screen walling off Herrera. However, the primary thrust of the City's argument on this issue was that, since Cobra subsequently agreed to an audit with the participation of the City Attorney's Office, the conflict of interest was not the reason Cobra refused the audit demand.

15

Cobra failed to provide supporting legal argument and record references; Cobra's sole citation is to a trial court brief on the issue. (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1162 [" 'The appellant may not simply incorporate by reference arguments made in papers filed in the trial court, rather than brief them on appeal' "].) Cobra also appears to challenge the jury's implied finding that the Purchaser did not have the authority to terminate the contract. There was testimony at trial that the Purchaser did not have such authority. This constitutes substantial evidence supporting the jury's implied finding.

To the extent Cobra raises other substantial evidence challenges to the jury's contract claim verdicts, it has waived these challenges by failing to "set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.)

V. *42 U.S.C. section 1983*

Cobra challenges the jury's adverse verdict on its claim under 42 U.S.C. section 1983 (section 1983). We affirm.

The jury's special verdict found, among other findings, that Cobra was not debarred. Cobra challenges the trial court's jury instruction on debarment, arguing it was error for the trial court to instruct the jury that Cobra must prove it was precluded "from bidding on *any* future business with [the City] . . . ." (Italics added.) Cobra contends this instruction was error because debarment from a *category* of contracts is sufficient to implicate a constitutional liberty interest and the instruction therefore precluded Cobra from "arguing the category of contracts theory of debarment."

We find any error harmless as it is reasonably probable the jury understood Cobra only needed to prove debarment from a category of contracts. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 682 ["When deciding whether an instructional error was prejudicial, 'we must examine the evidence, the arguments, and other factors to determine whether it is *reasonably probable* that instructions allowing application of an erroneous theory *actually* misled the jury' "].) First, Cobra was not, as it claims, precluded from arguing to the jury that a category of contracts was sufficient. It made the

precise argument in its closing: "all you need to reach a verdict for Cobra is to find that Cobra was precluded from bidding on Computer Store contracts"; "if you find that the City precluded Cobra from bidding on Computer Store contracts, that's sufficient. That's enough." Moreover, the City's closing argument did not contend Cobra needed to show it was precluded from bidding on *all* City contracts. Instead, the City argued Cobra was not precluded from bidding on a different category of contracts: information technology contracts. Cobra does not contend it was error to allow the jury to determine the category of contracts from which Cobra must prove debarment: information technology contracts or "Computer Store contracts." Accordingly, any error in the instruction that debarment required proof of preclusion from bidding on "any" future City contracts was harmless.[13]

Cobra also challenges the jury's finding that the City had provided adequate procedural protection to Cobra in connection with any debarment. Cobra contends the trial court erred in failing to instruct the jury that any participation by the City Attorney's Office in the determination of Cobra's eligibility for the second master contract would violate Cobra's due process rights as a matter of law. Cobra has failed to show where in the record it requested such an instruction. The only record cite Cobra provides for such a request is to a pretrial proposed stipulation that does not address the relevant issue; there is also no evidence it was submitted to the trial court before the jury verdict issued. Cobra has therefore waived this argument. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131 ["Where . . . 'the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, [they] must request *the additional or qualifying instruction in order to have the error reviewed*' "]; *Schmidlin*

---

[13] Because we affirm the jury's finding that Cobra was not debarred in connection with its failure to be awarded a second master contract, we need not reach the merits of Cobra's contention that the trial court erred in limiting its section 1983 claim to the second master contract. Cobra has not argued that the jury, after finding that Cobra was not debarred in connection with the second master contract, would find it was debarred in connection with the termination of the first master contract. Accordingly, any error was harmless.

17

*v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 ["It is the duty of counsel to refer us to the portion of the record supporting [their] contentions on appeal"].)

Because the jury's findings that Cobra was not debarred and, alternatively, that Cobra was afforded adequate procedural protection in connection with any debarment are sufficient to support the judgment against Cobra on this claim, we need not decide Cobra's remaining arguments regarding the section 1983 verdict.

VI. *Abuse of Process*

Before trial, the trial court sustained, for failure to state a claim, the City's demurrer to Cobra's counterclaim alleging abuse of process. Cobra's then-operative cross-complaint alleged the City "filed th[e] interpleader action for the improper purpose of blocking payment [to Cobra] and of withholding payment of monies due and owed by [the City] to [Cobra]." Cobra challenges this ruling.

The elements of abuse of process are " 'an ulterior purpose' " and " 'a willful act in the use of the process not proper in the regular conduct of the proceeding.' " (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168.) "[W]hile a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." (*Id.* at p. 1169; accord, *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1059.) As Cobra's abuse of process claim was based solely on the City's filing and maintenance of the interpleader action for an allegedly improper purpose, the trial court properly sustained the demurrer.

VII. *Adequacy of Statement of Decision*

Cobra argues the trial court's statement of decision—which spanned 18 pages plus an additional 13-page addendum—was inadequate because it did not address a number of issues despite Cobra's objection.

" 'In rendering a statement of decision . . . , a trial court is required only to state ultimate rather than evidentiary facts; only when it fails to make findings on a material

issue which would fairly disclose the trial court's determination would reversible error result. [Citations.] . . . A failure to find on an immaterial issue is not error. [Citations.] The trial court need not discuss each question listed in a party's request; all that is required is an explanation of the factual and legal basis of the court's decision regarding the principal controverted issues at trial as are listed in the request.' " (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) The trial court's statement of decision amply explained the factual and legal basis of the trial court's decision regarding the principal controverted issues. The trial court was not required to address the myriad additional issues identified by Cobra.

## DISPOSITION

The judgment is reversed as to the City's claims for intentional misrepresentation, negligent misrepresentation, and violation of the false claims acts, and the matter is remanded with directions to conduct a new trial limited to these claims. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.

_____

SIMONS, J.

We concur.

_____

JONES, P. J.

_____

BRUINIERS, J.

(A136679)

20

Superior Court of the City and County of San Francisco, No. CGC-03-417218, Hon.James J. McBride, Judge.

Gonzalez & Leigh, Law Offices of Whitney Leigh and G. Whitney Leigh, for Defendants and Appellants.

Cotchett, Pitre & McCarthy, Nancy L. Fineman and Aron K. Liang, for Plaintiff and Respondent.