Filed 5/7/25  Humble Fitness Beaumont v. Bedazzling Beaumont CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| HUMBLE FITNESS BEAUMONT, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BEDAZZLING BEAUMONT, LLC et al., <br><br> Defendants and Respondents. | G064547 <br><br> (Super. Ct. No. CVRI2103510) <br><br> O P I N I O N |

Appeal from a judgment and postjudgment order of the Superior Court of Riverside County, Chad W. Firetag, Judge. Affirmed.

Law Offices of Stephen B. Morris and Stephen B. Morris for Plaintiff and Appellant.

Tiedt & Hurd, John E. Tiedt and Matthew Ferris for Defendants and Respondents.

This appeal arises from the sale of a gym franchise and the seller's failure to inform the buyer about a rumor that a competitor might move into the area. Several months before listing the gym for sale, the seller, defendant Reid Bradley, heard a rumor that a larger gym might be built across the street, but he was unable to verify whether that was true. Bradley later agreed to sell the gym to plaintiff Humble Fitness Beaumont, Inc. When conducting due diligence for the transaction, Humble Fitness did not ask Bradley about current or potential competition in the area, and Bradley did not volunteer any information about the rumored future competitor. About 15 months after the sale closed, the larger gym opened for business across the street. Sometime thereafter, Humble Fitness went out of business.

Humble Fitness sued Bradley and his company for fraud, and the jury returned a defense verdict. It found that although Humble Fitness would have "behaved differently" had the rumor been disclosed, the nondisclosure was not a substantial factor in causing Humble Fitness's harm. We conclude substantial evidence supports the defense verdict, including the jury's finding of no causation. We therefore affirm the judgment and the trial court's postjudgment order denying Humble Fitness's motion for judgment notwithstanding the verdict (JNOV) and for new trial.

FACTS

I.

THE SALE OF THE GYM

Anytime Fitness is a boutique fitness coaching studio chain. Reid Bradley, who owns multiple Anytime Fitness franchises across the country, purchased an Anytime Fitness franchise in Beaumont, California in 2018 through his company, defendant Bedazzling Beaumont, LLC. In early 2019,

2

Bradley decided to sell the Beaumont Anytime Fitness due to burnout and fatigue from travel.

In April 2019, before Bradley listed the franchise for sale, a neighboring tenant stopped by Anytime Fitness and showed one of its employees a map of a proposed development for the empty dirt lot across the street. A Planet Fitness was among the many businesses on the map. The map was not dated and did not include the name of a developer or promoter. The employee informed Bradley about the map.

Bradley went to Planet Fitness's website and searched for existing or "coming soon" Planet Fitness locations in or near Beaumont, but he found nothing. In the past, Bradley had heard rumors about other large gyms like 24 Hour Fitness and Fitness 19 coming to the area, but those rumblings never proved true. Bradley concluded this was another such rumor and guessed there was at most a 50 percent chance a Planet Fitness would actually be built. Nevertheless, he developed a contingency plan for how to respond if Planet Fitness did move in, which included action items like increased marketing efforts, longer membership terms, and greater community involvement.

In May or June 2019, Bradley listed Anytime Fitness for sale through a broker, and in July, he received an offer from Furrukh Irshad. Irshad's company, Humble Fitness, entered into an asset purchase agreement with Bradley's company, Bedazzling Beaumont. The agreement, which was prepared using a form supplied by the broker, contained no seller representations or warranties about competition in the area, and Irshad did not request such a term.

Irshad performed his own due diligence for the transaction. He reviewed the documents supplied by Bradley, drove around the area, and

3

conducted Google searches to determine what other gyms were nearby. From this, he concluded there was minimal competition in Beaumont. He did not check with Beaumont's building department or chamber of commerce to see if any new businesses were coming to town, and he did not use attorneys or accountants to assist with the due diligence process.

When Irshad asked Bradley about how Anytime Fitness compared to its local competitors in terms of size, Bradley identified some minor competition in the area and added that competition was "'inevitable'"; Irshad agreed. Irshad did not ask Bradley who the local competitors were or whether any potential competitors were coming to town. And Bradley did not volunteer any information about the map his employee had seen or disclose the possibility that Planet Fitness might be built across the street. According to Bradley, his nondisclosure was intentional, as he did not think it was appropriate to talk about rumors.

To fund the purchase, Humble Fitness took out a loan with a floating interest rate to cover about 90 percent of the purchase price. As a result, Humble Fitness was highly leveraged, which Irshad conceded made his business more susceptible to risks. The sale closed in November 2019.

## II.

### THE DECLINE OF THE BUSINESS

The following month, Irshad learned about the map from an Anytime Fitness employee. Irshad went to Planet Fitness's website to see if Planet Fitness planned to open a location in Beaumont but found nothing.

In March 2020, the COVID-19 pandemic struck. Anytime Fitness was forced to shut down for about three months, resulting in some membership cancellations. Although business bounced back when the gym reopened that summer, Anytime Fitness soon faced other financial

4

difficulties. For example, the interest rate on its loan rose to 10 percent. Anytime Fitness also suffered reduced income following Irshad's decision to close the gym's personal training room.

In March 2021, Planet Fitness opened across the street. Anytime Fitness's net income had an "immediate drop." Anytime Fitness eventually closed its doors. Irshad concedes various post-purchase factors contributed to its failure, such as certain business decisions and the pandemic.

## III.

### THE TRIAL

Humble Fitness filed a complaint against Bradley and Bedazzling Beaumont, asserting claims for fraud and negligent misrepresentation based on Bradley's nondisclosure. At trial, Irshad testified he never would have purchased the Anytime Fitness franchise had he known Planet Fitness would be coming to town. Bradley took the position that he had no duty to disclose mere rumors and that Humble Fitness's losses were caused by other factors like Irshad's poor business decisions and the pandemic.

The jury returned a defense verdict. On its special verdict form for fraud (CACI VF-1901), the jury found Bradley and his company intentionally failed to disclose a material fact that Humble Fitness did not know and could not have reasonably discovered; that Bradley and his company intended to deceive Humble Fitness by concealing that fact; and that Humble Fitness reasonably would have "behaved differently" had the omitted information been disclosed. However, the jury found the concealment was not a substantial factor in causing harm to Humble Fitness.[1]

---

[1] On the negligent concealment claim, the jury found Bedazzling Beaumont made a false representation of fact but had reasonable grounds for

5

Humble Fitness filed a motion for JNOV or for new trial, asserting the jury's finding that Humble Fitness would have behaved differently had the omitted information been disclosed was inconsistent with its finding of no causation. According to Humble Fitness, since the evidence was uncontroverted that it would not have purchased the gym had it known about the impending arrival of Planet Fitness, then logically Bradley's failure to disclose the map was a substantial factor in causing Humble Fitness's damages.

The trial court was not persuaded and denied the motions. It reasoned that Bradley and Bedazzled Fitness had presented evidence of several other causes of the gym's failure, including Humble Fitness's floating interest loan, Irshad's decision to remove the gym's personal training space, the resulting loss of personal training revenue, and the COVID-19 pandemic. The court also found Irshad's testimony that he would not have purchased the gym had he known about the map to be "speculative," noting Irshad was "obviously industrious and very keen on purchasing a gym."

The trial court entered judgment for Bradley and Bedazzled Fitness. Humble Fitness appealed from the judgment and from the postjudgment order denying its motion for JNOV or new trial.

DISCUSSION

We review the denial of a motion for JNOV de novo and determine whether there is any substantial evidence supporting the verdict. In doing so, we review the facts in the light most favorable to the judgment and resolve all conflicts in favor of the verdict. (*Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1048.) We review an order denying a motion for

honestly believing the representation was true.

6

new trial for abuse of discretion that resulted in prejudicial error. (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018.)

Humble Fitness asks us to reverse the judgment and enter judgment in its favor, or alternatively remand this matter for a new trial, because Bradley's nondisclosure necessarily caused Humble Fitness's damages. Humble Fitness contends Irshad gave uncontroverted testimony that he would not have purchased the gym had he known about the map, and the jury accepted that testimony, as reflected by its finding that Humble Fitness would have "behaved differently" had the required disclosure been made. Humble Fitness concludes Bradley's nondisclosure necessarily harmed it, and the jury's finding of no causation must be rejected.

This argument has some initial appeal. At first blush, it seems inconsistent for the jury to find Humble Fitness would have behaved differently had the disclosure been made, yet conclude the nondisclosure was not a substantial factor in causing Humble Fitness's harm. If Humble Fitness would not have gone forward with the deal in the first place if Bradley had mentioned the map, one could argue none of the financial hardships later suffered by Humble Fitness would have happened and the nondisclosure was unquestionably a cause of the business's failure. If so, the jury's seemingly inconsistent special verdict findings would warrant a new trial. (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358 ["The proper remedy for an inconsistent special verdict is a new trial"]; see *Woodcock v. Fontana Scaffolding & Equipment Co.* (1968) 69 Cal.2d 452, 457 ["If the verdict is hopelessly ambiguous, a reversal is required"].)

But a potential inconsistency in the special verdict form is not enough to warrant reversal. "'A special verdict is inconsistent if there is no possibility of reconciling its findings with each other.'" (*Fuller v. Department*

*of Transportation* (2019) 38 Cal.App.5th 1034, 1038.) If the special verdict is not "'hopelessly ambiguous,'" we may interpret its language in reference to the pleadings, evidence, instructions, and counsel's argument. (*Ibid.*)

Here, the special verdict is not hopelessly ambiguous; nor is it impossible to reconcile the jury's findings. The jury did not expressly find Humble Fitness would have abandoned the deal had Bradley mentioned the map; it found only that Humble Fitness would have "behaved differently." This phrasing is open to several interpretations. True, it is possible the jury found Humble Fitness would have abandoned the deal, as Humble Fitness argues.[2] But it is equally possible the jury believed Humble Fitness would have still gone forward with the deal but would have made different business decisions (e.g., not securing a loan with a floating interest rate or not becoming so highly leveraged).

Indeed, the jury may have discredited Irshad's testimony that he would not have purchased the gym had he known about the map. (See *Moran v. Foster Wheeler Energy Corp.* (2016) 246 Cal.App.4th 500, 518 [jury may reject even uncontradicted witness testimony if it has reasonable grounds to do so].) As the trial court noted, "[c]learly in hindsight [Irshad] has regretted

---

[2] Humble Fitness's argument seemingly conflates the element of reliance (that Humble Fitness would have behaved differently) with the element of causation (that the concealment was a substantial factor in causing Humble Fitness's harm). "The elements of reliance and proximate causation are distinct." (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 870.) Even if a plaintiff shows reliance on the defendant's misrepresentation, "'no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes.*'" (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 365 [law student's damages were caused by his dismissal from school, not by school's misrepresentations inducing him to enroll].)

purchasing this gym, but the evidence is speculative whether [he] would have bought Anytime [Fitness] even if he had known about the map." We agree. After all, Irshad went forward with the deal even after Bradley told him competition was "'inevitable.'" And given Planet Fitness's website did not list a Beaumont location as "coming soon" until well after the sale closed, Irshad might well have concluded, just as Bradley did, that the map was just an unsubstantiated rumor.

The jury may have also attributed the gym's failure to other causes. As the trial court noted, Bedazzling Fitness and Bradley "posited several other credible reasons why [Humble Fitness's] business did not perform as hoped[, including] the devasting effects of COVID-19, substantial loans by [Humble Fitness] that made profitability difficult, the removal of personal training space at the Anytime Fitness gym[, and] a dramatic loss in personal training revenue."

If the jury believed Humble Fitness would have still gone forward with the deal, and if the jury instead attributed the gym's failure to any of those other reasons, the jury's finding that Humble Fitness would have "behaved differently" in the absence of the concealment is reconcilable with its finding that the nondisclosure was not a substantial factor in causing Humble Fitness's harm. (See CACI 430 ["Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct"].) Thus, viewing the evidence in the light most favorable to the judgment and resolving all conflicts in favor of the verdict, as we must, we conclude substantial evidence supports the defense verdict, including the jury's finding of no causation.

## DISPOSITION

The judgment and postjudgment order are affirmed. Bedazzling Beaumont and Bradley shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


SCOTT, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.