Filed 4/28/26  Kamal v. Burns CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EYAD KAMAL,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>              v.<br><br>DON C. BURNS et al.,<br><br>    Defendants, Cross-complainants and Appellants;<br><br>JASMINA KAMAL et al.,<br><br>    Cross-defendants and Respondents. | G065059<br><br>(Super. Ct. No. 30-2018-01027280)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David J. Hesseltine, Judge. Affirmed in part and reversed in part.

Law Office of Don C. Burns and Don C. Burns for Defendants, Cross-complainants and Appellants Don C. Burns and Arpi Evans-Burns.

Business Law Center and Jonathan Barry Sexton for Defendant, Cross-complainant and Appellant ZXRV, LLC.

The Law Office of Lewis & Lewis and John Lewis for Plaintiff, Cross-defendant, and Respondent Eyad Kamal and Cross-defendants and Respondents Jasmina Kamal and Zaid Kamal.

Maha Ishak, in pro. per., for Cross-defendant and Respondent.

\* \* \*

The underlying action arises from a lease and option to purchase a house owned by plaintiff Eyad Kamal and his wife, cross-defendant Jasmina Kamal (the Kamals).[1] Defendants and cross-complainants Don C. Burns and Arpi Evans-Burns (the Burnses) leased the house and entered into an option and purchase agreement whereby they intended to purchase the house. During the term of the written lease, the Burnses began significant renovations on the house. They also borrowed funds from defendant and cross-complainant ZXRV, LLC (ZXRV) to extend escrow. ZXRV was later listed as the buyer under the purchase agreement. The Burnses and ZXRV ultimately did not complete the renovations, pay the remaining lease payments, or purchase the house.

Eyad then filed suit against the Burnses and ZXRV for breach of the lease and breach of the purchase agreement, among other things. The Burnses and ZXRV filed a cross-complaint against the Kamals, cross-defendant Zaid Kamal, who was the Kamals' son and served as their real estate agent, and cross-defendant Maha Ishak, who was Zaid's broker. The

___

[1] Where necessary, we refer to the parties by first name to avoid confusion. No disrespect is intended.

2

Burnses and ZXRV claimed, inter alia, that the Kamals, Zaid, and Maha made material misrepresentations or failed to disclose known defects about the house.

The jury found in favor of Eyad and awarded $225,000 in damages. The trial court entered judgment on the jury's special verdict.

The Burnses raise three arguments on appeal. First, they contend the jury's answers to the special verdict questions are internally inconsistent or contrary to the evidence. Second, they claim the court should have rescinded the lease and the purchase agreement. Finally, they argue the court improperly excluded testimony of their expert witness.

ZXRV raises one issue on appeal. It argues the court erred by finding it was jointly and severally liable for $225,000 in damages.

For the reasons *post*, we agree the jury's findings on the cross-complaint's concealment cause of action are inconsistent. We accordingly remand for a new trial on that claim. We also modify the judgment to provide that ZXRV is jointly and severally liable for $135,000 (not $225,000) in construction repair damages. In all other respects, the judgment is affirmed.[2]

STATEMENT OF FACTS

I.

THE RESIDENTIAL LEASE AND OPTION AGREEMENT

In February 2015, the Kamals leased their Laguna Niguel home (the Property) to the Burnses. In addition to executing a lease agreement, the

---

[2] On the day before oral argument, Maha filed a motion to dismiss her as a respondent in the instant appeal. We deny the motion. As a prevailing party in the judgment under review, Maha remains a proper party to the appeal. Because she did not file a respondent's brief, we decide the appeal on the record, available briefs, and oral argument. (Cal. Rules of Court, rule 8.220(a)(2).)

3

parties entered into a purchase agreement and an option agreement whereby the Burnses could purchase the Property by September 2016, the date when the lease would terminate. The option agreement noted the consideration would be "$200,000 in upgrades to the [P]roperty." The purchase price for the Property was $3 million minus both the $200,000 consideration and an $11,100 security deposit.

The parties subsequently extended the lease and option to purchase several times. In October 2017, ZXRV loaned $150,000 to the Burnses so that they could extend escrow. Around the same time, the Kamals, Don, and ZXRV executed an addendum noting ZXRV would be the buyer under the purchase agreement, which was intended to serve as security for the $150,000 loan. The parties ultimately extended the lease and option to purchase until February 2019.

The Burnses eventually stopped paying rent, and ZXRV refused to consummate its purchase of the Property.

## II.

## THE COMPLAINT

In October 2018, Eyad initiated an unlawful detainer action to recover possession of the Property. In 2024, he filed the operative second amended complaint (SAC) against the Burnses, ZXRV, and another individual who is not a party to the instant appeal. According to the SAC, the Burnses stopped paying rent in October 2018 and did not vacate the Property until January 2019.

When Eyad inspected the Property after the Burnses vacated, he discovered the Burnses had caused substantial damage to the Property. They allegedly "damaged, destroyed or removed most of the drywall or wall coverings on the bottom floor, all downstairs floor coverings, and all fixtures

4

from the bottom floor . . . , including the kitchen appliances." They also "removed a weight bearing wall causing instability of the structure," "cut into the post-tension slab foundation," and generally "damaged the post-tension slab, tension cables, structure and support foundation of the [Property]." Several other items were missing or damaged, including furniture and appliances. The Burnses purportedly did not get permits necessary for the construction work and failed to notify the Property's association about the work.

The SAC further alleged it cost at least $200,000 to repair the damage. Eyad also lost rental income between January 2019, when the Burnses vacated, and August 2019, when the Property was finally repaired. Eyad sold the Property in March 2021 for $2,600,000. As to ZXRV, the SAC alleged ZXRV made "false subsidence claims" in order to refuse purchasing the Property.

Based on these allegations, the SAC alleged two causes of action against the Burnses and ZXRV: (1) breach of the purchase agreement and (2) breach of the implied covenant of good faith and fair dealing. The SAC also alleged five additional causes of action against only the Burnses: (1) breach of the lease agreement, (2) intentional misrepresentation, (3) negligent misrepresentation, (4) negligence, and (5) conversion.

### III.

### THE CROSS-COMPLAINT

The Burnses and ZXRV filed a cross-complaint against the Kamals, Zaid, Maha, and others who are not parties to the instant appeal. According to the fourth amended cross-complaint (the cross-complaint), the Kamals were represented by their son, Zaid, in negotiating the purchase agreement. Zaid, in turn, was supervised by his broker, Maha.

5

The cross-complaint alleges the Kamals, Zaid, and Maha did not disclose known defects or material facts regarding the Property. Among other things, they did not disclose water damage, soil subsidence, broken water lines, structural damage to the foundation, repairs undertaken by the Kamals, and insurance claims made by the Kamals related to water and structural damage. Based on these allegations, the cross-complaint alleged causes of action for intentional misrepresentation, fraudulent concealment, negligent misrepresentation, negligence, negligence per se, agreement induced by fraud or mutual mistake, and breach of contract.[3]

IV.

THE JURY VERDICT

*A. Eyad's Claims*

After the case proceeded to a jury trial in 2024, the jury returned a special verdict in favor of Eyad on his claim for breach of the lease. The jury awarded $225,000 in damages to Eyad, which covered the cost of construction to repair damages, failure to pay rent for four months, and loss of rent due to the Property being unlivable for seven months. The jury awarded no damages for "loss of value of the [Property] for having to resell at a lower price."

As to Eyad's claim for breach of the purchase agreement, the jury found Don and ZXRV breached the agreement and that Eyad was harmed. But the verdict form listed zeros for the same damages awarded for breach of the lease—i.e., cost of construction to repair damages, failure to pay rent for four months, loss of rent due to the Property being unlivable for seven months, and loss of value of the Property for having to resell at a lower price.

---

[3] The cross-complaint alleged additional causes of action against parties who are not involved in this appeal.

Likewise, as to Eyad's negligence claim, the jury found the Burnses were negligent and that their negligence was a substantial factor in causing harm to Eyad. But the verdict form again listed zeros for two categories of damages: cost of construction to repair damages and loss of value of the Property for having to resell at a lower price.

## B. The Burnses' and ZXRV's Claims

As to the cross-complaint, the jury returned a special verdict in favor of Eyad, Zaid, and Maha on all the claims asserted against them by the Burnses and ZXRV, except on the concealment cause of action, as discussed below.

## V.

## JUDGMENT

In October 2024, the court entered judgment on the jury's special verdict. In November 2024, the Burnses and ZXRV filed a motion for new trial or judgment notwithstanding the verdict. The court denied the motion, and the Burnses and ZXRV timely appealed.[4]

## DISCUSSION

## I.

## THE SPECIAL VERDICT FINDINGS ARE PARTLY INCONSISTENT

The Burnses argue the jury's answers to the special verdict questions are either internally inconsistent or contrary to the evidence. We agree the jury's findings on the cross-complaint's concealment cause of action are inconsistent. The other findings are not inconsistent or contrary to the evidence.

---

[4] The record on appeal does not include the reporter's transcript of the hearing on the motion for new trial or judgment notwithstanding the verdict.

7

*A. Applicable Law and Standard of Review*

"A special verdict is inconsistent if there is no possibility of reconciling its findings with each other. [Citation.] If a verdict appears inconsistent, a party adversely affected should request clarification, and the court should send the jury out again to resolve the inconsistency. [Citations.] If no party requests clarification or an inconsistency remains after the jury returns, the trial court must interpret the verdict in light of the jury instructions and the evidence and attempt to resolve any inconsistency." (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357–358, fn. omitted (*Singh*).)

We review de novo whether special verdict findings are inconsistent, and we do not infer findings to support the verdict. (*Singh, supra*, 186 Cal.App.4th at p. 358.) "'"Where the findings are contradictory on material issues, and the correct determination of such issues is necessary to sustain the judgment, the inconsistency is reversible error."' [Citations.]' [Citation.] 'The appellate court is not permitted to choose between inconsistent answers. [Citations.]' [Citation.] The proper remedy for an inconsistent special verdict is a new trial." (*Ibid.*)

*B. Internal Inconsistencies*

At the outset, we address the Kamals' contention that the Burnses forfeited their arguments because they did not identify the purported inconsistencies before the jury was discharged.

A party who believes a special verdict is ambiguous or internally inconsistent should object before the jury is discharged so the trial court may direct further deliberations. (*Singh, supra*, 186 Cal.App.4th at pp. 357–358.) "If the verdict is 'merely ambiguous,' a party's failure to seek clarification of the verdict before the jury is discharged may work a forfeiture of the

8

purported defect on appeal, 'particularly if the party's failure to object was to reap a '"technical advantage"' or to engage in a '"litigious strategy."''" (*Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 299.) However, "if the special verdicts are '"hopelessly ambiguous"' or inconsistent, failure to seek clarification from the jury does not create a forfeiture, and the proper remedy is ordinarily a retrial on the issues underlying the defective verdict." (*Id.* at p. 300.)

Here, the Burnses did not forfeit their arguments because they identify at least one inconsistency, not mere ambiguity, in the special verdict findings. They also objected to the proposed judgment and properly raised their arguments in a motion for new trial or judgment notwithstanding the verdict.[5]

1. No Damages for Concealment

The Burnses argue the verdict is irreconcilable because the jury found in their favor on all elements of concealment but awarded no damages. We agree.

The jury found: (1) Zaid, who was the real estate agent for his parents (the Kamals), intentionally failed to disclose a fact the Burnses could not have reasonably discovered; (2) Zaid intended to deceive by concealing the fact; and (3) the Burnses would have behaved differently if the omitted information had been disclosed. The jury further found Zaid's concealment was "*a substantial factor in causing harm*" to the Burnses. (Italics added.) These findings satisfy the elements of fraudulent concealment (CACI

---

[5] The record on appeal does not include the Burnses' objections to the proposed judgment.

9

No. 1901).[6] But the jury awarded no damages for economic losses (remodeling and relocation costs) or noneconomic losses, including mental suffering. The complete absence of damages cannot be reconciled with the finding of harm—i.e., Zaid's concealment was a substantial factor causing harm to the Burnses. Indeed, the jury was instructed that harm was an essential element of the concealment claim. (CACI Nos. 1901, 1910.) It was further instructed: "[Y]ou . . . must decide how much money will reasonably compensate [the Burnses] for the harm. This compensation is called 'damages.'" (CACI Nos. 1920, 1923.) Under these instructions, the jury was expected to award compensation for the harm it found to exist.

Given the internally inconsistent findings, the jury's intent regarding Zaid's liability is also unclear. We therefore remand for a new trial on the concealment cause of action against Zaid. (*Singh, supra*, 186 Cal.App.4th at p. 358 ["The proper remedy for an inconsistent special verdict is a new trial"]; *Missakian v. Amusement Industry, Inc.* (2021) 69 Cal.App.5th 630, 661–662 [remanding for a new trial due to inconsistent jury findings].)

2. Contractual Damages and Eyad's Contractual Performance

The Burnses next contend the damages award for their breach of the lease "is inconsistent with the finding of intentional and negligent misrepresentation and concealment by [Eyad] and his agent." They likewise claim the jury's finding that Eyad fulfilled his disclosure obligations under the relevant contracts is inconsistent with findings that the Kamals engaged in misrepresentations and concealment. But the Burnses do not identify any

_____

[6] On the court's own motion, we augment the record to include the September 12, 2024, jury instructions filed in the Orange County Superior Court, case No. 30-2018-01027280. We refer to the CACI jury instructions as given at trial.

jury finding regarding Eyad's "disclosure obligations." Instead, the jury generally found Eyad did all or substantially all the significant things required under the lease agreement. It further found Eyad was excused from having to do all or substantially all the significant things required under the purchase agreement.

These findings regarding Eyad's contractual performance are not inconsistent with tort findings on the cross-complaint. As to intentional misrepresentation, the jury found Zaid (not Eyad) knowingly or recklessly made a false representation of fact, which was *not* a substantial factor in causing harm to the Burnses. Although the jury found both Eyad and Zaid made a negligent misrepresentation of fact, they found the Burnses did not reasonably rely on the misrepresentation. In other words, the findings do not establish the Burnses were induced to enter into or continue the contractual relationship based on any negligent misrepresentation.

The concealment findings likewise do not create an irreconcilable conflict. The jury found Eyad and Zaid intentionally failed to disclose a fact, but only Zaid had the intent to deceive. Eyad's concealment also was not a substantial factor in causing harm to the Burnses. The jury therefore did not impose any liability on Eyad. As such, the verdict contains no findings suggesting the lease or purchase agreements were void or unenforceable.

The Burnses' argument assumes any misrepresentation or nondisclosure necessarily renders a contract invalid or unperformed. The special verdict does not compel that conclusion. At most, the jury found a false statement, which did not cause harm or was not reasonably relied upon, or concealment for which Eyad lacked intent to deceive. Those findings can coexist with the determination that Eyad performed his contractual

11

obligations and was excused from further performance under the purchase agreement.

### 3. Negligent Misrepresentation and Concealment

The Burnses further insist the jury made inconsistent findings on the negligent misrepresentation and concealment causes of action. They argue: "Finding that the buyers did not reasonably rely on negligent misrepresentations by Eyad . . . and Zaid . . . is inconsistent with the finding that [Zaid's] concealment was a substantial factor in causing harm to the buyers . . . ." We disagree. Negligent misrepresentation and concealment are distinct causes of action with separate elements. (Compare CACI No. 1901 with CACI No. 1903.) A finding of no reasonable reliance on one cause of action does not preclude a finding of causation under another cause of action.

### 4. Intentional Misrepresentation and Concealment

The Burnses further contend "[f]inding that [they] reasonably relied on the intentional misrepresentation by Zaid . . . but that his misrepresentation was not a substantial factor in causing harm" to them is "inconsistent with the findings on concealment." We presume the Burnses argue the jury's finding that Zaid's concealment was a substantial factor in causing harm necessarily requires a similar causation finding as to the intentional misrepresentation cause of action. Not so.

The elements of intentional misrepresentation include reasonable reliance and causation. (CACI No. 1900.) The verdict reflects the jury found reliance but not causation. The jury could conclude the Burnses reasonably relied on Zaid's misrepresentation but did not prove the misrepresentation was a substantial factor in causing compensable harm. The concealment findings do not alter that conclusion. The jury could determine an affirmative

12

misstatement did not cause harm but an omission of a different material fact did. When read as a whole, the findings are not inconsistent.

## C. *Inconsistencies with the Evidence*

The Burnses next contend the jury's findings are inconsistent with the evidence. First, they point to the finding that Eyad "did all the significant things the contracts . . . required him to do." They suggest an inconsistency exists because their expert witness testified water damage was a material fact that should have been disclosed. To the contrary, this evidence concerns a separate duty to disclose material facts. It does not contradict the jury's findings about the duties imposed by the relevant contracts. The Burnses also do not identify the specific portions of the contracts at issue.

Second, the Burnses complain about other findings but do not identify any evidence supporting the supposed inconsistencies. For example, they disapprove of the jury's findings that: (1) Zaid's negligence, "which would be attributable to his broker, Maha Ishak, did not cause harm"; (2) Zaid's intentional misrepresentation was not a substantial factor causing harm; and (3) Maha did not conceal the same facts concealed by Eyad and Zaid. A bare assertion of conflict without any citation to the record does not demonstrate an inconsistency with the evidence. (Cal. Rules of Court, rule 8.204(a)(1)(C) [a party must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

Finally, the Burnses argue the jury's "[f]inding that Eyad . . . and Maha . . . were not liable for the intentional misrepresentation, concealment and negligent misrepresentation by Zaid . . . as they worked together, hand in glove," is inconsistent with evidence of their relationship and principles of

13

agency law. As noted *ante*, Zaid was the Kamals' son and served as their real estate agent under the supervision of his broker, Maha. The jury was generally instructed on vicarious liability and that Maha would be responsible if the jury found "that Zaid . . . was acting within the scope of his agency when the incident occurred . . . ." (CACI No. 3703; see CACI No. 3700.) But contrary to the Burnses' assertion, the special verdict form did not ask the jury to determine whether Zaid was acting as Eyad's or Maha's agent for purposes of imputing liability. It also did not ask the jury to determine whether Eyad or Maha were vicariously liable for Zaid's conduct. Instead, the jury found Zaid's concealment was a substantial factor causing harm to the Burnses but rejected the other theories of misrepresentation. Because the verdict contains no separate findings that Zaid was acting within the scope of his agency, we cannot impose liability on Eyad and Maha through agency principles. (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242 ["'When a special verdict is involved as here, a reviewing court does not imply findings in favor of the prevailing party'"].) We also need not resolve the issue because the jury's findings on the concealment cause of action are inconsistent and we remand for a new trial.

II.

THE BURNSES DID NOT ELECT RESCISSION

The Burnses further argue the court should have rescinded the lease and purchase agreements. The record shows, however, the Burnses did not pursue that remedy. The case was tried on a theory of fraud damages, and the special verdict form asked the jury to determine specific damages. (See CACI No. 3934.) The Burnses also did not request an equitable decree to rescind the agreements. Having proceeded on a theory affirming the agreements and seeking damages, they cannot now argue the court erred by

14

failing to rescind them. (*Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1385 ["[r]escission and damages are alternative remedies," and election of one bars the other].) Our reversal of the concealment cause of action against Zaid does not alter that conclusion.

III.

THE COURT ERRED BY FINDING ZXRV JOINTLY

AND SEVERALLY LIABLE FOR ALL DAMAGES

ZXRV contends the court erred by entering judgment against it and finding it was jointly and severally liable for $225,000 in damages. According to ZXRV, the jury awarded damages for breach of the lease and ZXRV was not a party to that cause of action. Instead, it argues it was a party to the cause of action for breach of the purchase agreement for which the jury awarded no damages. For these reasons, ZXRV insists the court violated its right to a jury trial and entered a judgment that was inconsistent with the jury's findings.

The record supports ZXRV's arguments in part. ZXRV was not jointly and severally liable for the entirety of the $225,000 in damages, but it was jointly and severally liable for a portion of those damages.

*A. Relevant Background*

As noted *ante*, the jury found in favor of Eyad on his claim for breach of the lease against the Burnses. The jury awarded $225,000 in damages as follows: (1) $135,000 for cost of construction to repair damages, (2) $40,000 for failure to pay rent for four months, (3) $50,000 for loss of rent due to the Property being unlivable for seven months, and (4) $0 for loss of value of the Property for having to resell at a lower price.

The jury also found in favor of Eyad on his claim for breach of the purchase agreement against the Burnses and ZXRV. It specifically found Don

15

and ZXRV breached the purchase agreement and Eyad was harmed by their breach. But the verdict form listed zeros for the same category of damages awarded for breach of the lease.

The day after receiving the jury verdict, the court discussed with the parties whether they believed the jury's damages findings were ambiguous or inconsistent. The court noted the jury listed zeros when asked about damages for breach of the purchase agreement and negligence claims. But the jury awarded damages for breach of the lease, which included the same category of damages. The court believed the jury awarded zero damages for breach of the purchase agreement and negligence claims because "they were instructed to only award damages once." CACI No. 3934 instructed: "'[E]ach item of damages may be awarded only once regardless of the number of legal theories alleged.'" Given these instructions, the court explained: "[T]he presumption [is] they followed the instructions they were given, those zeros were because they already awarded it on an earlier legal theory and, therefore, didn't award it a second time."

The court then asked the parties if they agreed with the court's interpretation. If they did not, the court proposed it could ask the jury the following supplemental question: "Please answer the following question by checking the line that explains the basis for your response to questions number 16 and 19. You answered zero dollars for each of the identified items of damages in question number 16 and 19 because, A, jury instruction 3934 entitled damages on multiple legal theories instructed the identified items of damage may be awarded only once; or, B, you found plaintiff Eyad Kamal failed to prove any of the items of damages identified in question number 16 and 19." Assuming the jury answered with the latter response B, the court noted "that would be an inconsistency and they'd have to go into further

16

deliberations." Counsel for all parties agreed they did not need to further question the jury about the damages findings.

*B. Analysis*

Here, the court erred by finding ZXRV jointly and severally liable for the entirety of the $225,000 damages award. Instead, the court should have found ZXRV jointly and severally liable for the $135,000 awarded for cost of construction to repair damages.

CACI No. 3934 instructed the jury that "each item of damages may be awarded only once regardless of the number of legal theories alleged." The instructions then identified Eyad's legal theories, which included breach of the lease agreement and breach of the purchase agreement. (CACI No. 3934.) The instructions next explained the following damages were recoverable only once under the latter legal theories: (1) "Past lost profit"; (2) "*Cost of construction repair*"; (3) "Loss of rent for four months during tenancy"; (4) "Loss of rent due to house being unlivable for 7 months"; and (5) "*Loss of value for having to resell for a lower price*." (CACI No. 3934, italics added.) As to breach of the purchase agreement, the jury was again instructed that "*[c]ost of construction repair*" and "*[l]oss of value for having to resell for a lower price*" "are recoverable only once under the above legal theory." (CACI No. 3934.) In other words, "cost of construction repair" and "loss of value for having to resell for a lower price" were recoverable under both the breach of lease and breach of purchase agreement theories. Given the anti-duplication instructions, the jury's decision to award $135,000 for cost of construction repair under the lease cause of action while noting "0" on the breach of purchase agreement claim is consistent with CACI No. 3934.

However, the remaining $90,000 ($40,000 in unpaid rent and $50,000 in lost rental income) arises solely from obligations imposed by the

17

lease. ZXRV also was not a party to the lease, and the verdict does not reflect an award of rental damages against ZXRV under the purchase agreement. Imposing joint and several liability on ZXRV for the $90,000 rental component therefore exceeded the verdict.

Finally, the Kamals argue ZXRV's substitution into the option agreement rendered it jointly and severally liable for all damages. They point to provisions in the option agreement allowing the Kamals to retain the option consideration, rent, services rendered, and improvements to the Property if the option to purchase was not exercised. These latter provisions identify sums the Kamals would keep if the transaction failed. They did not impose lease obligations on ZXRV, require payment of unpaid rent, or effect an assumption of lease duties. In short, the option agreement does not provide a contractual basis for imposing $90,000 in rent-related damages on ZXRV.

The judgment is therefore modified to provide that ZXRV is jointly and severally liable for $135,000 in construction repair damages.

IV.

THE COURT DID NOT IMPROPERLY EXCLUDE EXPERT WITNESS TESTIMONY

The Burnses argue the court improperly excluded testimony of their expert, Gerald Minich, about soil movement. The court did not abuse its discretion.

A. *Relevant Background*

Before trial, the Burnses and ZXRV designated Minich as an expert who would testify about "[e]vidence of [the] condition of the [Property] before and after water damage reported on 8/8/2014; history of repairs and undisclosed defects and material conditions at [the Property]; cost of repair or remediation, as expected by [the Burnses] on or about 3/1/15; work performed

18

by [the Burnses] before discovery of material defects; scope of problems caused by soil movement and irrigation failure; observed pattern of distress features and retaining wall movement in the southwest portion of the lot; future rear yard movement and pool failure; potential cost of caissons and other steps to remedy soil movement and related damage."

At trial, Minich testified he was an architect. He acknowledged he was not a geotechnical expert and had no license in soils engineering. When asked if he had formal training "in soils," he testified he did not but had "40 years of experience." As part of his job as an architect, he "inspect[ed] the building process and . . . design[ed] . . . building[s]." When designing a building, he considered the soil conditions of the property and reviewed a soils report. He also was familiar with building on hillsides, but he did not have "experience building on hillsides with soil creep" unless it had been identified in a soils report. When asked if he had experience building on properties where the soils report identified soil creep, he responded: "Normally, [the soils reports] do not." He had designed a caisson system for hillside properties about three times.

Minich defined soil creep as "[s]lippage between the two different layers of soil" and noted that introducing water into soil impacts soil creep. He later defined soil creep as "natural movement towards a lower elevation," which was "[c]aused by rain, earthquakes or excessive watering." He noted soil creep was not something that would stop until "it falls down the hill." When questioned a second time as to whether creep would not stop "until it falls down the hill," the court sustained a lacking foundation objection.

Minich further testified he inspected the Property in September 2018 to see if there was "[s]tuff that could be a potential hazard, stuff that could be a potential cost to fix and errors in construction." After the Burnses'

19

counsel questioned whether Minich had made any observations about soil movement, the court sustained an objection, finding the question was vague.

Minich then testified the inside of the Property and walls were bent while a back wall by the pool was "bowed out." He further noted a "window was cracking, supports were missing," "[t]he pool was tipped," and the retaining wall "was also tipped." When asked if he told the Burnses why some of these conditions existed, he testified: "It was either as a result of earthquakes, slippage." The Kamals' attorney asserted a lacking foundation objection and noted Minich was not a soils expert. The court sustained the objection.

Minich also testified about what he had reported the cost of a caisson system might be for the Property. The court sustained an objection that the testimony assumed facts not in evidence.

When questioned if he knew about "any breaks in irrigation lines" at the Property, Minich testified: "No, but obviously there were" "[b]ecause [of] the amount of creep." The Kamals' attorney objected on the grounds of speculation and lacking foundation. The court sustained the objections.

Finally, Minich described the "deadman tieback . . . technique used with caissons." The court sustained a lacking foundation objection to a question as to whether Minich recommended the deadman tieback technique on the Property.[7]

B.  *Applicable Law and Standard of Review*

An expert witness may testify as an expert if the witness "has special knowledge, skill, experience, training, or education sufficient to

---

[7] We only summarize the portions of Minich's testimony relevant to the instant appeal.

qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) His or her testimony also must be "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (*Id.*, § 801, subd. (b).)

"For purposes of evaluating an expert's qualifications, expertise ""is relative to the subject,' and is not subject to rigid classification according to formal education or certification." [Citation.] Rather, an expert's qualifications can be established in any number of different ways, including "a showing that the expert has the requisite knowledge of, or was familiar with, or was involved in, a sufficient number of transactions involving the subject matter of the opinion."" (*Richard v. Union Pacific Railroad Co.* (2024) 105 Cal.App.5th 1263, 1277.)

We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) An abuse of discretion occurs only if "'the trial court's decision exceeds the bounds of reason and results in a miscarriage of justice.'" (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292.)

C. *No Abuse of Discretion*

Here, the court did not abuse its discretion by sustaining the above disputed objections. Although Minich was a licensed architect and considered soil conditions in his designs, nothing in the record suggested he had experience in geotechnical engineering or soil mechanics. He also never claimed to have experience building on hillsides where soil creep had been

21

identified. Regardless, the court allowed Minich to testify about his general understanding of soil creep. On this record, the court's rulings did not exceed the bounds of reason. The court could reasonably require additional foundation before permitting Minich to opine about: (1) the predicted progression of soil movement on the hillside; (2) whether the Property conditions were caused by slippage or earthquakes; (3) whether there must have been breaks in irrigation lines due to soil creep; and (4) whether he recommended the deadman tieback technique for the Property, which was an engineering solution.

Even assuming any error, the Burnses do not offer an adequate claim of prejudice. "The erroneous exclusion of evidence is grounds for reversal only if 'in light of the entire record, it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Richard v. Union Pacific Railroad Co., supra*, 105 Cal.App.5th at p. 1280.) The Burnses do not address how a different outcome was reasonably probable if the court had not sustained the above objections. Indeed, the Burnses claim similar testimony was provided by plaintiff's expert, Gregory Axten, who was a geotechnical engineer. Any potential error was accordingly harmless, or the Burnses have forfeited any claimed prejudice.

## DISPOSITION

The judgment is reversed as to the cross-complaint's concealment cause of action against Zaid, and the matter is remanded with direction to the trial court to conduct a new trial on the concealment cause of action against Zaid. The judgment also is modified to provide that ZXRV is jointly and severally liable solely for $135,000 in construction repair damages, and not for the remainder of the damages award. In all other respects, the judgment is affirmed. In the interests of justice, all parties shall bear their own costs incurred on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:


DELANEY, J.


SCOTT, J.